

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-5-1994

# Lundy v. Adamar of NJ

Precedential or Non-Precedential:

Docket 93-5265

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Lundy v. Adamar of NJ" (1994). *1994 Decisions.* Paper 70.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/70

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


NO. 93-5265


SIDNEY LUNDY; CLAIRE LUNDY

Appellants

v.

ADAMAR OF NEW JERSEY, INC., t/a TROP WORLD

Defendant/Third Party Plaintiff

v.

DR. DOMENIC FRANK CARLINO, individually;
DR. DOMENIC FRANK CARLINO, a Professional Association

Third-Party Defendants



On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civil Action No. 91-03183)



Argued November 1, 1993

BEFORE: BECKER and STAPLETON, Circuit Judges, and
RESTANI,* Judge, United States Court of
International Trade

(Opinion Filed  July 6, 1994)


1

Andrew F. Napoli (Argued)
Norman R. Segal
Manchel, Lundy & Lessin
42 S. 15th Street, 8th Floor
Philadelphia, PA 19102

    Attorneys for Appellants

Stephen Hankin (Argued)
Thomas F. Bradley
Hankin, Sandson & Sandman
30 South New York Avenue
Atlantic City, NJ  08401

    Attorneys for Appellee
    Adamar of New Jersey
    d/b/a TropWorld Casino and
    Entertainment Resort

James P. Savio (Argued)
Savio, Reynolds & Drake
29 N. Shore Road
P.O. Box 345
Absecon, NJ  08201

    Attorneys for Appellees-
    Third-Party Defendants,
    Dr. Dominic Frank Carlino and
    Dr. Dominic Frank Carlino, a
    Professional Association

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Appellant Sidney Lundy suffered a heart attack while a patron at appellee's casino, TropWorld Casino ("TropWorld"), in

3

Atlantic City, New Jersey.  While he survived, Lundy was left with permanent disabilities.  Lundy and his wife here appeal from a summary judgment entered against them by the district court.  Their appeal raises two issues:  (1) what duty, if any, did TropWorld owe under New Jersey law to provide medical care to Lundy, and (2) whether the Lundys were entitled to amend their complaint to include an additional defendant, Dr. Dominic Carlino.[0]

The district court held that TropWorld's duty is, at most, to provide basic first aid to the patron when the need becomes apparent and to take reasonable steps to procure appropriate medical care.  Because the court found no evidence that TropWorld was negligent in carrying out this duty to Lundy, it granted TropWorld's motion for summary judgment.  With regard to the Lundys' motion to amend, the court found that the amendment would not relate back to the time of the filing of the complaint under Rule 15(c) and, accordingly, that the alleged claim against Dr. Carlino would be barred by limitations.  We will affirm.

## I.  FACTUAL BACKGROUND

On August 3, 1989, Lundy, a 66 year old man with a history of coronary artery disease, was patronizing TropWorld Casino.  While Lundy was gambling at a blackjack table, he

---

[0]The proposed amendment would have added both Dr. Carlino and Dr. Domenic Frank Carlino, a Professional Association.  For simplicity, we will refer to both as Dr. Carlino.

4

suffered cardiac arrest and fell to the ground unconscious. Three other patrons quickly ran to Lundy and began to assist him. The first to reach him was Essie Greenberg ("Ms. Greenberg"), a critical care nurse. Ms. Greenberg was soon joined by her husband, Dr. Martin Greenberg ("Dr. Greenberg"), who is a pulmonary specialist. The third individual who aided Lundy did not disclose his identity, but he indicated to Dr. Greenberg that he was a surgeon. During his deposition, Dr. Greenberg stated that, when he first arrived on the scene, Lundy was unresponsive, not breathing, and without a pulse. Dr. Greenberg testified that he, his wife, and the surgeon immediately began to perform cardiopulmonary resuscitation ("CPR") on Lundy.

Meanwhile, the blackjack dealer at the table where Lundy had been gambling pushed an emergency "call" button at his table which alerted TropWorld's Security Command Post that a problem existed. The Security Command Post is electronically designed to designate the location from which such alarms are triggered and record the time that the alarm is sounded. The alarm was recorded as being received at 10:57 p.m. Noting that the source of the alarm was "Pit 3," a Security Command Post employee notified by phone the security post located on the casino floor near where Lundy had suffered his cardiac arrest. At 10:59 p.m., the Security Command Post employee sent radio directions to all of the guards on the casino floor requesting that they each go to Lundy's location.

A sergeant in TropWorld's security force and a TropWorld security guard arrived at the blackjack table

5

apparently within fifteen seconds of their receiving the radio message from the Security Command Post. The Greenbergs and the unidentified surgeon were already assisting Lundy. Upon arriving, the security guard called the Security Command Post on her hand-held radio and requested that someone contact the casino medical station, which was located one floor above the casino. Several witnesses agree that Nurse Margaret Slusher ("Nurse Slusher"), the nurse who was on-duty at the casino medical station at the time, arrived on the scene within a minute or two of being summoned. As soon as Nurse Slusher arrived, she instructed the security guards to call for an ambulance. TropWorld's records indicate that an ambulance was summoned at 11:00 p.m.

Nurse Slusher brought with her an ambu-bag,[0] oxygen, and an airway.[0] She did not, however, bring an intubation kit[0] to the scene. Dr. Greenberg testified that he asked Nurse Slusher for one and she told him that it was TropWorld's "policy" not to have an intubation kit on the premises. Dr. Greenberg

---

[0]Dr. Greenberg testified that an ambu-bag is a "device that's utilized to assist in respiration when a person is either unable to breathe on his own or is having difficulty breathing . . .. It's usually a cylindrical-sort-of-shaped plastic bag with a face mask attached to it that is applied over the person's mouth and nose, and subsequent pressure on the bag will allow for air to be entered into the person's nose and mouth . . . . It's [a] purely mechanical [device]." App. 213-14.
[0]The device known as an airway is a plastic apparatus that keeps the mouth open and holds the tongue in place. App. 165.
[0]According to Dr. Greenberg, an intubation kit consists of equipment that is used to insert an endotracheal tube into an individual, thereby establishing a more efficient airway than that which can be established with an ambu-bag.

6

also noted that Nurse Slusher told him that she previously worked at a different casino which did have an intubation kit in its medical station, and that she had requested one here as well. Nurse Slusher testified at her deposition that some of the equipment normally found in an intubation kit was stocked in TropWorld's medical center,[0] but that she did not bring this equipment with her because she was not qualified to use it.

Nurse Slusher proceeded to assist the three patrons in performing CPR on Lundy. Specifically, Nurse Slusher placed the ambu-bag over Lundy's face while the others took turns doing chest compressions. The ambu-bag was connected to an oxygen source. Dr. Greenberg testified that he was sure that air was entering Lundy's respiratory system and that Lundy was being adequately oxygenated during the period when he was receiving both CPR treatment and air through the ambu-bag. Dr. Greenberg went on to say that the only reason he had requested an intubation kit was "[t]o establish an airway and subsequently provide oxygen in a more efficient manner." App. 228.

The TropWorld Security Command Post radio log reflects that an Emergency Medical Technician ("EMT") unit arrived at TropWorld by ambulance at approximately 11:03 p.m. The EMT's report lists 11:02 p.m. as the time of arrival. Based on the fact that he performed CPR "for what seemed like an extensive amount of time," Dr. Greenberg estimated that "at least twenty

---

[0] Nurse Slusher testified that she did not bring either the laryngoscope or endotracheal tubes with her, which, according to Dr. Greenberg, are pieces of equipment normally found in an intubation kit.

7

minutes" elapsed between the time Lundy suffered cardiac arrest and the time the EMT unit arrived at Pit 3.  App. 220.

Upon the arrival of the EMT unit, a technician, with the help of the two doctor patrons, attempted to intubate Lundy using an intubation kit brought by the EMT unit.  Dr. Greenberg claimed that, due to Lundy's stout physique and rigid muscle tone, it was a very difficult intubation, and that there were at least a half dozen failed attempts before the procedure was successfully completed.  After intubation, Lundy regained a pulse and his color improved.  According to EMT reports, the ambulance departed from TropWorld with Lundy at 11:27 p.m., and it arrived at the Atlantic City Medical Center, which is located less than one mile from TropWorld, at 11:29 p.m.

The Lundys filed this diversity action against TropWorld less than two weeks before the applicable statute of limitations expired on August 3, 1991.[0]  TropWorld filed an answer to the Lundys' complaint on September 12, 1991, along with a third-party complaint against a Dr. Carlino.  TropWorld alleged that, in the event it were held liable to the Lundys, it would be entitled to either contribution or indemnification from Dr. Carlino.

TropWorld had a contract with Dr. Carlino providing that he would run an in-house medical station to supply medical services for TropWorld's employees, guests, and patrons in cases of work-related injuries and injuries or sicknesses occurring on

---

[0]The applicable limitations period is two years.  See N.J. Stat. Ann. § 2A:14-2 (West 1987).

8

the premises.  The contract required that Dr. Carlino provide a licensed physician on the casino premises for five hours each day, and a physician "on-call" for the rest of the day.  Any physician selected by Dr. Carlino was subject to dismissal by TropWorld for good cause only.  Furthermore, Dr. Carlino was obligated to have a registered nurse present in the medical station during the hours that the casino was open.  Each nurse was to be chosen by Dr. Carlino, but was subject to dismissal by TropWorld for any reason whatsoever.  The contract specifically stated that Dr. Carlino's status would be that of an independent contractor and the doctors and nurses at the station were to be employees of Dr. Carlino.  In August of 1989, Nurse Slusher was a registered, licensed nurse with over fifteen years of experience.

Dr. Carlino's contract with TropWorld required him to stock the medical station with certain designated medical hardware, including a Puritan-Bennett Manual Resuscitator (i.e. an ambu-bag with oxygen), intravenous solutions for cardiopulmonary resuscitation, a cardiac board, an oxygen cylinder with nasal canula and mask, and a laryngoscope with intubation tube.[0]  The contract, which was signed on December 11, 1987, required that medical services be performed for a period of two years in exchange for a flat fee from TropWorld.

According to the Lundys, they did not know that Nurse Slusher was employed by an organization other than TropWorld until TropWorld filed its third party complaint against Dr.

---

[0]According to Dr. Greenberg, these are all items that are typically included in an intubation kit.

9

Carlino on September 11, 1991. By this time, however, the two-year statute of limitations had expired. Eight months later, the Lundys filed a motion under Fed. R. Civ. P. 15(c) to amend their original complaint to add third party defendant Dr. Carlino as an original party defendant. This motion was granted by a magistrate judge on July 8, 1992.

Upon the completion of discovery, TropWorld filed a motion for summary judgment which was joined by Dr. Carlino. Dr. Carlino also filed an appeal from the order of the magistrate judge granting the Lundys' Rule 15(c) motion. The district court granted the motion for summary judgment and reversed the magistrate's order granting the Rule 15(c) motion.

## II. THE DISTRICT COURT'S DECISION

The district court held that TropWorld had fulfilled its duty to Lundy under New Jersey law. The court found that TropWorld had "immediately summoned medical attention for Mr. Lundy once it became aware of his need for it." App. 651-52. Additionally, the court stated that "the very fact that TropWorld contracted with Dr. Carlino is evidence that it fulfilled its duty to aid injured patrons by having at least a registered nurse available, trained in emergency care, who could immediately size up a patron's medical situation and summon appropriate emergency medical personnel and equipment by ambulance to respond to the patrons's (sic) emergency needs." App. 652. The court also

found that the Lundys' case failed for "lack of proof of deviation from the standard of medical care."[0] App. 655.

Additionally, the court held that New Jersey's Good Samaritan Statute, N.J. Stat. Ann. § 2A:62A-1 (West 1993), shielded TropWorld and its employees from liability for any acts or omissions they took while rendering care in good faith to Lundy. Finally, the court held that the casino could not be held liable for any of Nurse Slusher's actions because she was an employee of independent contractor Dr. Carlino, rather than an employee of TropWorld.

Turning to the Lundys' Rule 15 motion to add Dr. Carlino as a party defendant, the district court found that neither the version of Rule 15(c) in effect at the time of the filing of the Lundys' motion nor the subsequently amended version of that Rule permits a plaintiff, after the running of the

---

[0]The Lundys presented the court with a report from an expert which stated, inter alia:

> (1) It is correct to say that intubation allowed for an improved exchange of oxygen that accounted for his improvement in color. (2) It is correct to say that, had the intubation equipment been available to the pulmonary physician who was doing CPR, Mr. Lundy's condition would have been better. (3) It is also correct that, to a reasonable degree of medical certainty, had Mr. Lundy been intubated sooner, there would have been a decreased likelihood of harm.

The court found that even if it accepted the Lundys' expert's opinion as completely true, which it was required to do for the purposes of summary judgment, the expert in no way suggested that the standard of care that casino ownership must meet includes having an intubation kit on the premises. The expert opinion addressed only causation and not duty. App. 653-55.

statute of limitations, to add an entirely new defendant of whom the plaintiff had been unaware during the limitations period. The court stated that Rule 15(c) "applies only to problems of misnomer and misidentification and not the addition of an entirely different party." App. 632. Furthermore, the court held that, even if Rule 15(c) were interpreted as permitting the addition of previously unidentified parties, the Lundys' amended complaint did not relate back to their original complaint because Dr. Carlino did not receive notice of a claim by the Lundys against him within the 120-day period as required by subsection (3) of the Rule.

Our review of the district court's decision to grant summary judgment is plenary. Wheeler v. Towanda Area Sch. Dist., 950 F.2d 128, 129 (3d Cir. 1991). Because the district court's decision regarding the Rule 15(c) motion was based on the court's interpretation of the Federal Rules of Civil Procedure, we exercise plenary review of this decision as well. International Union, UAW v. Mack Trucks, Inc., 917 F.2d 107, 110 (3d Cir. 1990), cert. denied, 499 U.S. 921 (1991).[0]

### III. TROPWORLD'S MOTION FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure state that a court may grant summary judgment only if there is no genuine issue as to any material fact and if the moving party is subject to

---

[0]We exercise appellate jurisdiction over this case pursuant to 28 U.S.C. § 1291. The district court had subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 based on diversity of citizenship between the parties and an amount in controversy in excess of $50,000.

judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" when it "might affect the outcome of the suit under the governing law."  Id.  Disputes over facts which are irrelevant or unnecessary will not preclude a grant of summary judgment.  Id.

The initial burdens of informing the court of the basis for a motion for summary judgment and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact fall on the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party can satisfy these initial burdens, Rule 56(e) states that the nonmoving party "may not rest upon the mere allegations or denials of his [or her] pleadings, but his [or her] response . . . must set forth specific facts showing that there is a genuine issue for trial."  Gans v. Mundy, 762 F.2d 338, 341 (3d Cir.) (citing Fed. R. Civ. P. 56(e)), cert. denied, 474 U.S. 1010 (1985).  However, any reasonable inferences that can be drawn from the record must be viewed in the light most favorable to the party opposing the motion.  Sorba v. Pennsylvania Drilling Co., Inc., 821 F.2d 200, 202–03 (3d Cir. 1987), cert. denied, 484 U.S. 1019 (1988).  It is with this standard in mind that we review the district court's decision to grant TropWorld's motion for summary judgment.

The Lundys cannot, and do not, claim that TropWorld was responsible in any way for Mr. Lundy's medical emergency. Nor do they claim that TropWorld breached a duty to procure competent aid from the outside with reasonable expedition. Rather, as we understand it, the Lundys advance two theories of liability against TropWorld. First, the relationship between a casino and its patrons gives rise to a duty to provide medical care, and TropWorld breached this duty when it failed to have on-site the equipment and skilled personnel necessary to perform an intubation. Second, TropWorld breached a voluntarily assumed duty by failing to provide Dr. Greenberg, upon his request, with the laryngoscope with intubation tube that was available in the medical station. We will address each theory in turn. Because there are no New Jersey Supreme Court cases which clearly delineate the duties owed by casino ownership to patrons suffering medical emergencies, we must predict how that court would rule on this question. Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1366 (3d Cir. 1993).

A.

Generally, a bystander has no duty to provide affirmative aid to an injured person, even if the bystander has the ability to help. See W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 56, at 375 (5th ed. 1984). New Jersey courts have recognized, however, that the existence of a relationship between the victim and one in a position to render aid may create a duty to render assistance. See, e.g., Praet v. Borough of Sayreville, 527 A.2d 486, 489 (N.J. Super. Ct. App. Div. 1987). In Szabo v. Pennsylvania R.R. Co., 40 A.2d 562 (N.J. Err. & App. 1945), for example, New Jersey's highest court held that, in the absence of a contract or statute, an employer generally has no duty to provide medical service to treat an ill or injured employee, even if the illness or injury was the result of the employer's negligence. However, if the employee, while engaged in the work of his or her employer, sustains an injury rendering him or her helpless to provide for his or her own care, the employer must secure medical care for the employee. Id. at 563. If a casino owner in New Jersey owes no greater duty to its patrons than an employer owes its employees while they are engaged in the employer's business, we think it clear that TropWorld did not fail in its duty to render assistance.

The Lundys insist, however, that TropWorld had a duty beyond that recognized in Szabo. They urge specifically that the Supreme Court of New Jersey would adopt the rule set forth in the Restatement (Second) of Torts § 314A (1965). Section 314A states in pertinent part:

15

(1) A common carrier is under a duty to its
    passengers to take reasonable action

(a) to protect them against unreasonable risk
of physical harm, and

(b) to give them first aid after it knows or
has reason to know that they are ill or
injured, and to care for them until they can
be cared for by others.

(2) An innkeeper is under a similar duty to
its guests.

(3) A possessor of land who holds it open to
the public is under a similar duty to members
of the public who enter in response to his
invitation.

We think it likely that the Supreme Court of New Jersey would accept the principles enunciated in § 314A and would apply them in a case involving a casino and one of its patrons. We need not so hold, however. The pertinent commentary following § 314A indicates that the duty "to take reasonable action . . . to give . . . first aid" in times of emergency requires only that carriers, innkeepers and landowners procure appropriate medical care as soon as the need for such care becomes apparent and provide such first aid prior to the arrival of qualified assistance as the carrier's, innkeeper's or landowner's employees are reasonably capable of giving. Clearly, the duty recognized in § 314A does not extend to providing all medical care that the carrier or innkeeper could reasonably foresee might be needed by a patron. Specifically, the commentary states:

> f. The defendant . . . [i]n the case of an
> ill or injured person . . . will seldom be
> required to do more than give such first aid
> as he reasonably can, and take reasonable
> steps to turn the sick man over to a
> physician, or to those who will look after

16

him and see that medical assistance is obtained.

Nurse Slusher was a registered, licensed nurse who had been trained in emergency care and who had fifteen years of nursing experience. The uncontradicted evidence was that, despite this training and experience, she was not competent to perform an intubation. It necessarily follows that the duty which the Lundys insist the New Jersey Supreme Court would recognize in this case would require casinos to provide a full-time on-site staff physician. Certainly, maintaining on a full-time basis the capability of performing an intubation goes far beyond any "first aid" contemplated by § 314A. We are confident the New Jersey Supreme Court would decline to impose liability on TropWorld for failing to maintain that full-time capability.

B.

The Lundys further claim that, even if there would otherwise be no duty to provide a level of care encompassing intubation, TropWorld voluntarily assumed a duty to provide such care and breached that duty by negligently failing to provide it. As we understand the argument, TropWorld voluntarily assumed this duty in two ways. First, by contracting with Dr. Carlino to have a laryngoscope with intubation tube on the premises, TropWorld voluntarily assumed the duty of having it available for use on request. Second, by voluntarily undertaking to assist Mr. Lundy, TropWorld assumed a duty to use due care in providing that assistance and breached this duty when Nurse Slusher failed to

17

bring the laryngoscope with intubation tube to Dr. Greenberg.  In connection with this second argument, the Lundys rely upon the principles outlined in § 324 of the <u>Restatement (Second) of Torts</u> which provides:

> One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by
>   (a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge, or
>
>   (b) the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him.

As we have indicated, TropWorld's medical center, as a result of its contract with Dr. Carlino, did have a laryngoscope with intubation tube as part of its inventory of equipment. Nurse Slusher did not bring this equipment with her when she was summoned to Pit 3, however.  She brought only that equipment that she was qualified to use:  the ambu-bag, oxygen, and an airway. At some point after her arrival on the scene, Dr. Greenberg asked for an intubation kit.  While the Lundys do not expressly so state, we understand their contention to be that Nurse Slusher should have returned to the medical center at this point and retrieved the intubation tube for Dr. Greenberg's use and TropWorld is liable for her failure to do so.  They suggest that her failure to do so was the result of an ill-considered

18

TropWorld policy that she was not permitted to use intubation equipment.

We reject the notion that TropWorld, by contracting with Dr. Carlino, voluntarily assumed a duty to Mr. Lundy it would not otherwise have had. The Lundys have referred us to no New Jersey case law supporting this proposition and we have found none.

The Lundys' argument based on § 324 of the Restatement, ignores the fact that the principles restated therein have been materially altered by New Jersey's Good Samaritan Act, § 2A:62A-1 N.J. Stat. Ann. That Act provides that anyone "who in good faith renders emergency aid at the scene of an . . . emergency to the victim . . . shall not be liable for any civil damages as a result of acts or omissions by such person in rendering the emergency care." We believe the Supreme Court of New Jersey would hold that this mandate protects TropWorld from liability in the situation before us.

The Lundys do not, and cannot, assert that there was bad faith here.[0] Rather, they seek to avoid the effect of New

_____

[0]Nurse Slusher's refusal to retrieve the intubation kit from her office does not constitute bad faith. Indeed, the record paints a picture of a good faith effort to revive Lundy and to maintain his respiration and pulse pending the arrival of the emergency medical technicians. The purpose of the Act is precisely to promote such commendable gratuitous undertakings as that exemplified by TropWorld. See Praet, 527 A.2d at 489 ("[T]he grant of legislative immunity to a volunteer was designed, simply and obviously, to encourage gratuitous assistance by those who have no legal obligation to render it."); id., 527 A.2d at 488 ("'The purpose of [the Act] is to encourage the rendering of aid to injured persons at the scene of an accident or emergency

19

Jersey's Good Samaritan Act by relying on what is known as the "preexisting duty" exception to the Act. Under this exception, the Act provides no immunity from liability if the duty allegedly breached by the volunteer was a duty that existed prior to the voluntary activity. E.g., Praet v. Borough of Sayreville, 218 N.J. Super. 218, 527 A.2d 486 (1987) (police officers who have a preexisting duty to render emergency assistance to a motorist trapped in a car may be held liable for failing to extricate motorist and prevent fire). We do not believe the preexisting duty exception is applicable under New Jersey law in a situation, like the present one, where the preexisting duty is a limited one and the alleged negligence is the failure to provide a level of assistance beyond that required by the preexisting duty.

We think this becomes apparent when one focuses on the purposes of the Good Samaritan Act and the preexisting duty exception and on the nature of the preexisting duty in this case. The purpose of the Good Samaritan Act is to encourage the rendering of assistance to victims by providing that the voluntary rendering of aid will not give rise to any liability that would not otherwise exist. The preexisting duty exception recognizes that fulfillment of this objective of the statute can be accomplished without the eradication of preexisting duties.

Nurse Slusher had no preexisting duty to Lundy apart from her role as an employee of TropWorld (or, arguably, as an employee of an independent contractor of TropWorld). Nurse

without fear of civil liability.'" (quoting legislative history of original bill)).

20

Slusher, if she had been a fellow patron, for example, would have had no preexisting duty obligation and she would have been fully protected by the Good Samaritan Act.  Thus, the only relevant preexisting duty for purposes of applying the Act under New Jersey law is the preexisting duty owed by TropWorld to Mr. Lundy.  That preexisting duty, as we have seen, was a duty limited to summoning aid and, in the interim, taking reasonable first aid measures.  It did not include the duty to provide the medical equipment and personnel necessary to perform an intubation.  It follows, we believe, that Nurse Slusher's conduct with respect to the providing or withholding of the intubation equipment on the premises was not conduct with respect to which she or TropWorld owed a preexisting duty to Lundy.  It further follows that, if TropWorld is responsible for the assistance voluntarily provided by Nurse Slusher, it is protected by the Act from liability arising from her alleged negligence in failing to provide that intubation equipment.[0]  Accordingly, we conclude

---

[0]At times, the Lundys appear to be arguing that TropWorld, by putting intubation equipment on its premises, voluntarily assumed a duty beyond its preexisting duty to take reasonable first aid measures and that TropWorld is, accordingly, liable for a breach of that voluntarily assumed duty.  If the Lundys do so argue, we believe there are two answers.  First, the Good Samaritan Act would protect TropWorld from liability arising from its voluntary activity.  Second, a decision voluntarily to provide intubation equipment for the use of physician employees of an independent contractor who were known to be qualified to use it does not constitute a decision voluntarily to provide such equipment to strangers who volunteer assistance at the site of an emergency. These decisions involve distinctly different considerations, and we are confident that the Supreme Court of New Jersey would not regard them as equivalent.

21

that TropWorld's motion for summary judgment was properly granted.

## IV.   THE LUNDYS' MOTION TO AMEND

Rule 15(c) sets forth the circumstances under which an amendment to a pleading will relate back to the date of the original pleading for limitations purposes.  Prior to December 1, 1991, an amendment that "change[d] the party against whom a claim was asserted" related back to the date of the original complaint only if (1) "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," (2) within the period provided for commencing an action against the new party, the new party received such notice of the institution of the action that the new party would not be prejudiced in maintaining a defense on the merits, and (3) within that same period, the new party knew or should have known that "but for a mistake concerning the identity of the proper party," the action would have been originally filed against him or her. An amendment to Rule 15(c) which became effective on December 1, 1991, changed the second and third of these requirements by deleting the references to the period for commencement of an action and by substituting "the period provided by Rule 4(j) for the service of the summons and complaint."  Rule 4(j) provides that if the summons and complaint are not served "within 120 days of the filing of the complaint and the party on whose behalf such service was required cannot show good cause why service was not

22

made within that period, the action shall be dismissed."  The Lundys contend that their amended complaint adding Dr. Carlino relates back to the date of the original complaint under the amended version of Rule 15(c) because all of the requirements of the rule were met within 120 days of the filing of their original complaint.[0]

The 1991 amendment also added to Rule 15(c) a new subsection (c)(1) providing that an "amendment of the pleadings relates back to the date of the original pleading when (1) relation back is permitted by the law that provides the statute of limitations applicable to the action."  The Lundys urge that this provision is applicable to all amended complaints, including those that change the party against whom a claim is asserted.  We accept this contention for present purposes.

Because the current version of Rule 15(c) came into effect after the original complaint was filed here, but while the case was still pending, there is some question as to whether the previous version of the rule governs, or whether the current version of the rule should be retroactively applied.  However, because we believe that the Lundys' attempted amendment would not

---

[0]This case accordingly does not involve the issue of the circumstances under which the period for applying the second and third requirements may be longer than 120 days.  Specifically, the Advisory Committee Notes following Rule 15 state that "this rule allows not only the 120 days specified in [Rule 4] but also any additional time resulting from any extension ordered by the court pursuant to that rule, as may be granted, for example, if the defendant is a fugitive from service of the summons."  Here, the Lundys do not suggest that Dr. Carlino's knowledge was greater at some other potentially relevant point than it was during the 120 day period.

relate back to their original complaint under either version of Rule 15(c), we need not answer the question of retroactivity.

Dr. Carlino did not receive any notice of the institution of the Lundys' action within the applicable statute of limitations, which expired on August 3, 1991. Therefore, the Lundys' amendment would clearly not relate back to the original complaint if the previous version of Rule 15(c) applies.

Analysis under the current version of Rule 15(c) is a bit more complicated, yet it leads us to the same result. The complaint was filed on July 22, 1991, which was about two weeks before the expiration of the statute of limitations on August 3, 1991. The one hundred and twentieth day after the filing was November 19, 1991. The Lundys correctly point out that Dr. Carlino had received TropWorld's cross-claim on September 12, 1991 and had thus become aware of the existence of the suit at that time. The Lundys further stress that Dr. Carlino answered the cross-claim on October 18, 1991, and undoubtedly had reviewed their original complaint prior to filing that answer. It is their original complaint that the Lundys insist put Dr. Carlino on notice that "but for a mistake concerning identity of the proper party," the action would have been brought against him. Accordingly, we turn to that relatively brief complaint.

After identifying the parties and making the necessary jurisdictional allegation, the Lundys' complaint reads in relevant part:

> 2. At all times material hereto, Defendant acted, and failed to act, by and through its agents, servants, work persons

24

and employees in the course and scope of employment.

3. On or about August 3, 1989, while Plaintiffs were business invitees lawfully on Defendant's premises, Plaintiff, Sidney Lundy, suffered a cardiac arrest.

4. At all time [sic] material hereto, Defendant, as the owner in possession of a hotel, restaurant and gambling complex open to the public, was under a duty to its business invitees to have proper first aid facilities and personnel available to its business invitees and was also under a duty to its business invitees to take reasonable action to render first aid to such business invitees, when necessary.

5. At all time material hereto, Defendant knew, and had reason to know, that Plaintiff had suffered a cardiac arrest and required first aid, oxygen and other medical attention.

6. Defendant negligently, recklessly and carelessly failed to perform its duty to Plaintiff by failing to have such emergency-first aid facilities, oxygen or medical personnel available.

7. Although Defendant telephoned for an ambulance to take Plaintiff to the hospital, it otherwise rendered no first aid or emergency medical treatment whatsoever to Plaintiff, despite his crucial need for same.

8. Due to all the foregoing, Defendant increased the likelihood of harm to the Plaintiff.

9. Due to all the foregoing, Defendant negligently, recklessly and carelessly caused serious and permanent bodily injuries to Plaintiff and caused aggravation and exacerbation of Plaintiff's injuries and hypoxic encephalopathy.

App. 10-11.

25

We agree with the Lundys that Dr. Carlino received notice of the existence of the litigation within 120 days of the filing of the complaint. We cannot agree, however, with their position that during that period he "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against" him. Like the district court, we conclude to the contrary.[0]

The Lundys' complaint asserted a claim against TropWorld on the theory that "as the owner in possession of a . . . gambling complex open to the public" it had a duty to its business invitees that it breached by (1) failing to have "emergency-first aid facilities, oxygen or medical personnel available" and (2) by rendering "no first aid or emergency medical treatment whatsoever" to Mr. Lundy. This may or may not have appeared to Dr. Carlino to be a viable theory of liability against TropWorld. Clearly it must have communicated to him that the Lundys intended to sue someone else. Dr. Carlino would not have been liable under the theory advanced in the complaint,

---

[0]The magistrate judge concluded that Dr. Carlino had reason to believe the Lundys, but for a mistake concerning the identity of the proper party, would have sued him. Accordingly, the magistrate judge granted the Lundys' motion to amend under Rule 15. This ruling was dispositive of Dr. Carlino's statute of limitations defense and the district court, accordingly, was free to rule de novo on the issue presented by this third requirement of Rule 15(c). Fed. R. Civ. P. 72(b). We review the district court's finding on that issue under a clearly erroneous standard. Varlack v. SWC Caribbean, Inc., 550 F.2d 171, 174 (3d Cir. 1977). While the district court described the magistrate judge's conclusion as "clearly erroneous," it owed no deference to that conclusion. Nor do we. We do not disagree, however, with the district court's characterization of the magistrate judge's conclusion as being "clearly erroneous."

however, and we perceive no reason why it should have led Dr. Carlino to believe the Lundys intended to sue him and had failed to do so because of a mistake concerning identity.[0]

Where there is a basis for the plaintiff to assert liability against the party or parties named in a complaint and there is no reason for another party to believe that the plaintiff did anything other than make a deliberate choice between potential defendants, courts have consistently held that the third requirement of Rule 15(c)(3) is not met. See, e.g., Lovelace v. O'Hara, 985 F.2d 847 (6th Cir. 1993) (complaint alleges theory of liability against public officer in official capacity; no basis for believing claim against official in

---

[0] This case does not require us to decide whether Rule 15(c) applies in a situation where a proposed defendant should have known that, but for a mistake concerning the identity of the proper party, the plaintiff would have sued both the original defendant and the proposed defendant. We may assume that Rule 15(c) does cover such a situation. Dr. Carlino's only information, during the relevant period, concerning the Lundys' intent in filing their complaint was the information contained in that complaint. The Lundys there complained only about an alleged failure to provide emergency equipment and personnel and about an alleged failure to provide any "emergency medical treatment whatsoever." These allegations provide a basis for claims by the Lundys against TropWorld and possibly cross-claims by TropWorld against Dr. Carlino for breach of contract. However, the Lundys have suggested no legal theory under which these allegations could provide a basis for a claim by the Lundys against Dr. Carlino. If there be such a theory, it is sufficiently creative that we do not believe Dr. Carlino should be held to have anticipated it. As the district court stressed, there is no allegation in the Lundys' complaint that treatment of Mr. Lundy was undertaken by an employee of TropWorld who provided such treatment negligently. Accordingly, we are not faced with the issue of whether Dr. Carlino should have known that, but for a mistake concerning the identity of the employer of an employee alleged to be negligent in the complaint, the Lundys should have sued both TropWorld and Dr. Carlino.

27

individual capacity intended); <u>Hernandez Jimenez v. Calero Toledo</u>, 604 F.2d 99, 103 (1st Cir. 1979) ("appellees could very well have believed that they were not named as parties in the original action for tactical reasons or because appellant lacked evidence of their alleged participation in the conspiracy when he filed the complaint"); <u>Great Northeastern Lumber & Millwork Corp. v. Pepsi-Cola Metropolitan Bottling Co., Inc.</u>, 785 F.Supp. 514, 516 (E.D. Pa. 1992) (manufacturer of component part in product liability situation "may have believed plaintiff made a deliberate choice rather than a 'mistake' in deciding not to join [it]").

This is such a case. The complaint gave Dr. Carlino no reason during the relevant period to believe that the Lundys had intended to sue him. Indeed, after TropWorld filed a cross-claim against him on September 12, 1991, and the Lundys failed during the remaining 51 days of the 120 day period to amend to join him, Dr. Carlino had affirmative reason to believe that the Lundys did not wish to assert liability against him.

Finally, we turn to the Lundys' contention that, because their amended complaint against Dr. Carlino relates back under New Jersey law, we should hold that it relates back here under the provisions of Rule 15(c)(1), as amended in 1991.

> Rule 4:9-3 of the New Jersey Rules of Court states:
> **When Amendments Relate Back**
> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading; but the court,

28

> in addition to its power to allow amendments
> may, upon terms, permit the statement of a
> new or different claim or defense in the
> pleading. An amendment changing the party
> against whom a claim is asserted relates back
> if the foregoing provision is satisfied and,
> <u>within the period provided by law for
> commencing the action against him, the party
> to be brought in by amendment (1) has
> received such notice of the institution of
> the action that he will not be prejudiced in
> maintaining his defense on the merits, and
> (2) knew or should have known that, but for a
> mistake concerning the identity of the proper
> party, the action would have been brought
> against him</u>.

(emphasis added). This provision is virtually identical to the original version of Rule 15(c). Like that Rule, New Jersey's Rule 4:9-3 requires that for an amendment changing, or, presumably, adding a party to relate back, the new party must receive notice of the institution of the action prior to the running of the applicable statute of limitations. <u>See</u> <u>Townsend v. Great Adventure</u>, 429 A.2d 601, 607 (N.J. Super. Ct. App. Div. 1981) (an amendment adding an additional defendant did not relate back to the original complaint pursuant to Rule 4:9-3 when there was "no showing that [the new defendant] received notice within [the applicable statute of limitations] that any action had been instituted by [plaintiff] against any person for his injuries and losses."). Because Dr. Carlino did not receive any notice of the Lundys' suit prior to the expiration of the statute of limitations, the Lundys' amendment does not relate back to their original complaint under New Jersey law. Accordingly, we reject the Lundys' argument that their claim against Dr. Carlino relates

29

back to the date of their original complaint under Fed. R. Civ. P. 15(c), as amended in 1991.

## V.   CONCLUSION

The judgment of the district court will be affirmed.

Lundy v. Adamar of New Jersey, Inc., No. 93-5265


BECKER, Circuit Judge, concurring in part of the judgment and dissenting in part.

Federal Rule of Civil Procedure 15(c) was amended in 1991 "to prevent par[ties] against whom claims are made from taking unjust advantage of otherwise inconsequent[ial] pleading errors to sustain a limitations defense." FED. R. CIV. P. 15, advisory committee's note -- 1991 amendment. I believe that the majority has lost sight of [the] motivation behind the 1991 amendment to Rule 15 as well as of the plain meaning of [the] Rule, and thereby has deprived the plaintiff of his day in court on the basis of a technicality. I respectfully dissent from Part IV of the majority's opinion.

I concur with the majority, however, that Trop World was entitled to summ[ary] judgment on the issue of whether it breached a duty toward Lundy by not having more [ ] medical equipment and/or medically-trained personnel available in case of emergency[;] hence I concur in much of Part III. However, I write separately on the issue of Tr[op] World's duties toward Lundy because I disagree with the majority's conclusion that [New] Jersey Supreme Court would rule that, even had Trop World been Nurse Slusher's empl[oyer,] Trop World would still be entitled to summary judgment. While I agree with the maj[ority] that Trop World is not liable for Nurse Slusher's conduct only because she was empl[oyed by] an independent contractor, I must discuss this point because if the majority is cor[rect,] Dr. Carlino and Dr. Carlino, P.A. might be entitled to summary judgment even if the[y had] been named as defendants from day one.[0]


I.  THE 1991 AMENDMENT OF RULE 15(C)

---

[0]Lundy has not appealed the district court's rulings that Dr. Carlino and Dr. Carli[no,] P.A. were independent contractors and that this case does not fit into the exceptio[ns New] Jersey recognizes to nonliability for an independent contractor's conduct.

2

On April 30, 1991, the Supreme Court recommended an amendment to Rule 15(

at the same time proposed an effective date of December 1, 1991.  The stimulus behi

amendment was the harsh result in Schiavone v. Fortune, 477 U.S. 21, 106 S. Ct. 237

(1986).  In that case the plaintiffs had filed a timely libel complaint against "Fo

rather than against "Time, Incorporated", the owner of the Fortune trademark. Time'

registered agent had, based on the misnomer in the complaint, refused plaintiffs' s

a short time after the statute of limitations expired, but within the time allowed

serving the summons and complaint.  The plaintiffs served their amended complaint

containing the defendant's correct name about two months later.

Confronted with the plain language of Rule 15(c), the Supreme Court held

the plaintiffs' claim against Time was time-barred.[0]  It took the Rule's straightfo

---

[0]The Rule now provides in pertinent part:

> **Relation Back of Amendments.**  An amendment of a pleading relates back to
> date of the original pleading when
>
> . . .
> (2)        the claim or defense asserted in the amended pleading aros
> of the conduct, transaction, or occurrence set forth or attempted to
> forth in the original pleading, or
> (3)        the amendment changes the party or the naming of the party
> against whom a claim is asserted if the foregoing provision (2) is
> satisfied and, within the period provided by Rule 4(m) for service of
> summons and complaint, the party to be brought in by amendment (A) h
> received such notice of the institution of the action that the party
> not be prejudiced in maintaining a defense on the merits, and (B) kn
> should have known that, but for a mistake concerning the identity of
> proper party, the action would have been brought against the party.

FED. R. CIV. PROC. 15(c).  The time period provided by Rule 4(m) is 120 days, subject
extensions for good cause shown.  See FED. R. CIV. P. 4(m).
[0]The Rule as it existed then provided that "`[a]n amendment changing the party agai
whom a claim is asserted relates back if the foregoing provision is satisfied and,
the period provided by law for commencing the action against him, the party to be b
in by amendment (1) has received such notice of the institution of the action that
not be prejudiced in maintaining his defense on the merits, and (2) knew or should
known that, but for a mistake concerning the identity of the proper party, the acti
would have been brought against him.'" Schiavone, 477 U.S. at 24 n.5, 106 S. Ct. 23
(quoting FED. R. CIV. P. 15(c) (1990)) (emphasis supplied).

text to mean that the plaintiffs could not relate back the amendment of the defenda

name on the complaint unless the "new" defendant had notice of the suit prior to th

expiration of the statute of limitations.  See 477 U.S. at 30, 106 S. Ct. at 2384 (

not have before us a choice between a `liberal' approach toward Rule 15(c), on the

hand, and a `technical' interpretation of the Rule, on the other hand.  The choice,

instead, is between recognizing or ignoring what the Rule provides in plain languag

accept the Rule as meaning what it says.").

The Supreme Court recognized the spartan and admittedly arbitrary consequ

of its holding and, acting on the recommendation of the Advisory Committee on Civil

and the Standing Committee on Rules of Practice and Procedure of the Judicial Confe

of the United States, soon thereafter recommended the aforementioned amendment to F

15(c), which Congress approved.  The advisory committee, whose notes are accorded

significant weight, see Schiavone, 477 U.S. at 31, 106 S. Ct. at 2385, explained th

new rule was designed

> to prevent parties against whom claims are made from taking unjust advant
> otherwise inconsequential pleading errors to sustain a limitations defens
> . . .
> Paragraph (c)(3) . . . has been revised to change the result in Schi
> v. Fortune, supra, with respect to the problem of a misnamed defendant.
> intended defendant who is notified of an action within the period allowed
> Rule 4(m) for service of a summons and complaint may not under the revise
> defeat the action on account of a defect in the pleading with respect to
> defendant's name, provided that the requirements of clauses (A) and (B) h
> been met.  If the notice requirement is met within the Rule 4(m) period,
> complaint may be amended at any time to correct a formal defect such as a
> misnomer or misidentification.  On the basis of the text of the former ru
> Court reached a result in Schiavone v. Fortune that was inconsistent with
> liberal pleading practices secured by Rule 8.

FED. R. CIV. P. 15, advisory committee note -- 1991 amendment.

The fact that the result the Supreme Court reached in Schiavone led it sh

to amend the Rule is a sure reminder of the liberality of federal pleading practice

4

This liberality is expressed throughout the Rules[0] and is enshrined in a long and di

guished history.[0]

A.    Retrospective Operation of the 1991 Amendment

Since Lundy conceded that the old Rule 15(c), which was in effect at the

filed his complaint, would have barred his action against Dr. Carlino and Dr. Carli

---

[0]See, e.g., FED. R. CIV. P. 1 ("These rules . . . shall be construed and administered
secure the just, speedy, and inexpensive determination of every action." (emphasis
supplied)); id. 8(f) ("All pleadings shall be so construed as to do substantial jus
(emphasis supplied)); id. 61 ("The court at every stage of the proceeding must disr
any error or defect in the proceeding which does not affect the substantial rights
parties." (emphasis supplied)).

[0]See, e.g., Torres v. Oakland Scavenger Co., 487 U.S. 312, 316, 108 S. Ct. 2405, 24
(1988) ("[T]he requirements of the rules of procedure should be liberally construed
. . . `mere technicalities' should not stand in the way of consideration of a case
merits[.]"); Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 373, 86 S. Ct. 845, 851
rules of procedure work as they should in an honest and fair judicial system, they
only permit, but should as nearly as possible guarantee that bona fide complaints b
carried to an adjudication on the merits."), reh'g denied, 384 U.S. 915, 86 S. Ct.
(1966); Foman v. Davis, 371 U.S. 178, 181, 83 S. Ct. 227, 230 (1962) ("It is too la
the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure
decisions on the merits to be avoided on the basis of . . . mere technicalities.");
v. Gibson, 355 U.S. 41, 48, 78 S. Ct. 99, 103 (1957) ("The Federal Rules [of Civil
Procedure] reject the approach that pleading is a game of skill in which one misste
counsel may be decisive to the outcome and accept the principle that the purpose of
pleading is to facilitate a proper decision on the merits."); Maty v. Grasselli Che
303 U.S. 197, 200, 58 S. Ct. 507, 509 (1938) ("Pleadings are intended to serve as a
of arriving at fair and just settlements of controversies between litigants.  They
not raise barriers which prevent the achievement of that end."); see also 2A JAMES W
& JO D. LUCAS, MOORE'S FEDERAL PRACTICE ¶ 8.02, at 8-10 (2d ed. 1994) ("The real importan
the pleading rules is that they make pleadings, in and of themselves, relatively un
tant.  Cases are to be decided on the merits."); 2 id. ¶ 1.13[1], at 1-59 ("[Rule 1
a theme of liberality in the application of the procedural rules and fosters the pr
that the outcome of cases should turn on their merits rather than on technical issu
pleading and procedure."); 3 id. § 15.15[2], at 15-146 ("The general philosophy of
pleading rules is that they should give fair notice, should be liberally construed,
subject to liberal amendment, and that decisions should be on the merits and not on
technical niceties of pleading." (footnotes omitted)); 5 CHARLES A. WRIGHT & ARTHUR R.
FEDERAL PRACTICE AND PROCEDURE §1286, at 558-59 (2d ed. 1990) ("[A]n inadvertent mistake
pleading will not be held against the pleader if another party has not been misled
mistake or otherwise prejudiced."); 4 id. § 1029, at 118 ("The federal rules are de
to discourage battles over mere form and to sweep away needless procedural controve
that either delay a trial on the merits or deny a party his day in court because of
technical deficiencies.").

P.A. (collectively "the Carlinos"), the first question I must consider is whether t

amendment

applies retrospectively to cases pending in the district court at the time the amen

became effective.

Most courts of appeals have held that the amendment should normally opera

retrospectively.  See Woods v. Indiana University–Purdue University at Indianapolis

F.2d 880, 886 (7th Cir. 1993); Garvey v. Vaughn, 993 F.2d 776, 778, 783 n.17 (11th

1993); Skoczylas v. Federal Bureau of Prisons, 961 F.2d 543, 545–46 (5th Cir. 1992)

v. United States Postal Serv., 961 F.2d 153, 155–56 (11th Cir. 1992); Bayer v. Unit

States Dep't of Treasury, 956 F.2d 330, 334–35 (D.C. Cir. 1992). The Supreme Court,

authorized by the Enabling Act, 28 U.S.C.A. § 2074 (Supp. 1993), ordered the amende

to be applied to all pending cases if "just and practicable."[0]  There certainly is

practicability objection to its retrospective operation. Thus the only remaining qu

is whether it would be "just" to apply the rule retrospectively.

Without oversimplifying, the justice of retrospective operation has alrea

largely been accounted for in the context of Rule 15(c)(3) by the very terms of the

That is, insofar as the Rule demands an inquiry into "prejudice" to and "knowledge"

---

[0]Specifically, the Supreme Court's order states that the amendments to the Federal
of Civil Procedure "shall take effect on December 1, 1991, and shall govern all
proceedings in civil actions thereafter commenced and, insofar as just and practica
all proceedings in civil actions then pending." Order Re: Amendments to Federal Rul
Civil Procedure, 111 S. Ct. Preface 813 (April 30, 1991) (emphasis supplied).  Cong
delegated to the Supreme Court the authority to make changes in the Rules retrospec

> [Proposed rules of the Supreme Court] shall take effect no earlier than D
> 1 of the year in which such rule is [transmitted to Congress] unless othe
> provided by law.  The Supreme Court may fix the extent such rule shall ap
> proceedings then pending, except that the Supreme Court shall not require
> application of such rule to further proceedings then pending to the exten
> in the opinion of the court in which such proceedings are pending, the
> application of such rule in such proceedings would not be feasible or wou
> injustice, in which event the former rule applies.

20 U.S.C.A. § 2074(a) (Supp. 1993).

6

party to be added, it is safe to dispense with the justness inquiry at the retrospe[...]

stage of the analysis.  See Woods, 996 F.2d at 886.  Simply put, if the party to be [...]

had notice and is not prejudiced, and knew or should have known that it was an inte[...]

party, it would not be unjust to apply the new rule retrospectively to that party. [...]

considerations lead me to conclude that Rule 15(c) retrospectively applies to this [...]


### B.  Application of the Amended Rule

For an amendment to relate back under Rule 15(c), the party seeking the [...]

amendment must show that "the party to be brought in by amendment (A) has received [...]

notice of the institution of the action that the party will not be prejudiced in [...]

maintaining a defense on the merits, and (B) knew or should have known that, but fo[...]

mistake concerning the identity of the proper party, the action would have been bro[...]

against the party."  FED. R. CIV. P. 15(c)(3) (emphasis supplied).  Although the maj[...]

dismisses Lundy's complaint against the Carlinos on the "mistake" prong, I will in[...]

---

[0]Only two courts of appeals' decisions have declined to apply the amendment to Rule [...]
retrospectively, Diaz v. Shallbetter, 984 F.2d 850, 853 (7th Cir. 1993) and Freund [...]
Fleetwood Enterprises, Inc., 956 F.2d 354, 363 (1st Cir. 1992).  But in Woods, a di[...]
panel of the Seventh Circuit determined to give effect to the Supreme Court's direc[...]
apply the amended Rule to all pending cases "insofar as just and practicable" by [...]
essentially confining Diaz to cases in which the district court had dismissed the e[...]
complaint prior to the effective date of the amendment.  The court of appeals held [...]
Rule 15(c) would apply retrospectively to all cases pending in the district courts [...]
December 1, 1991.  996 F.2d at 885–86.

Freund was decided as it was by virtue of its odd assortment of facts, in[...]
of which retrospective operation would have worked a "manifest injustice."  The cou[...]
appeals emphasized that (1) the plaintiff had lost a full jury trial involving almo[...]
same issues against some other defendants and there was no reason to think a second[...]
trial's outcome would differ; and (2) it would likely have concluded its appellate [...]
before the amendment took effect on December 1, 1991 had the plaintiff presented hi[...]
"weak" arguments on appeal "in a more forthright manner."  956 F.2d at 363.

The common thread coursing through both Diaz and Freund is the fact that [...]
proceedings in the district court had terminated prior to the effective date of the [...]
amendment.  Since this special circumstance is missing here, even assuming Diaz and[...]
are persuasive, they are inapposite.

7

interest of thoroughness discuss notice and prejudice in proper order and then turr

question of what the Carlinos knew or should have known.

### 1. Did the Carlinos Receive Adequate Notice?

The question whether the Carlinos received adequate notice is comprised o

subissues:  (i) may notice by a co-defendant ever satisfy the notice requirement of

15(c)? and (ii) was there in fact sufficient notice to the Carlinos within the 120-

extension that Lundy had instituted an action?

The interesting notice issue in this case is whether notice can be suppli

an original defendant who files a cross-claim against the newly named defendant; ir

general, the question is whether the plaintiff must actually serve a summons and co

on the newly named defendant before the expiration of the 120 day period.  I believ

contrary to the decision by the district court, that the fact that the Carlinos re

notice from a third party should not be dispositive, "since it is unwise to place u

emphasis on the particular way in which notice is received."  6 CHARLES A. WRIGHT, ART

MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1497, at 93 (2d ed. 1990).

This Court has seldom spoken on the meaning of "notice" in context of Rul

15(c).  We have held that notice of the institution of the action implies more than

of the event giving rise to the cause of action, Bechtel v. Robinson, 886 F.2d 644,

n.12 (3d Cir. 1989), and that much cannot be doubted as Rule 15(c) by its terms re

"notice of the institution of the action" (emphasis supplied).  A strict interpreta

notice was rendered under the pre-1991 incarnation of Rule 15(c) in Williams v. Arr

Force Exchange Service, 830 F.2d 27 (3d Cir. 1987), in which the plaintiff had file

Title VII complaint against a federal agency rather than its head.  This Court stat

footnote that plaintiff's inquiries with the defendant agency did not place it on '

"[b]ecause only service constitutes notice."  830 F.2d at 30 n.2 (emphasis supplied

8

I think service by a third party defendant satisfies even the strict sta[n]

Williams, assuming that part of the case remains good law after the 1991 amendment

light of its possible inconsistency with the earlier case of Varlack v. SWC Caribbe[an]

Inc., 550 F.2d 171, 175 (3d Cir. 1977).  All that matters according to the terms of [the]

Rule is satisfactory notice that the plaintiff has instituted an action, not actual

service naming the defendant.  See Varlack, 550 F.2d at 175 (holding that the dist[rict]

court did not commit clear error when it held defendant had adequate notice of the [suit]

when he coincidentally saw a copy of the complaint naming both the restaurant where [he was]

a manager and an unknown employee as defendants within the limitations period, beca[use he]

knew that the "unknown employee" referred to him); 6A WRIGHT ET AL., FEDERAL PRACTICE AND

PROCEDURE § 1498, at 129-30 (arguing in context of third-party practice like that in[volved]

here that "the better practice is to determine the propriety of amendment in light [of]

Rule 15(c) notice requirements").

The language of amended Rule 15(c) and the advisory committee's notes un[derscore]

my view.  Had the drafters of Rule 15(c) contemplated that only actual service with [the]

complaint and summons naming the party to be added would suffice, they could have a[voided]

the precise but complex language they actually used and simply provided in its stea[d that]

an amendment changing a party would relate back if within the period provided by R[ule 4(m)]

for service of the summons and complaint, the party to be brought in by amendment i[s in]

fact properly served according to Rule 4.  This they did not do.  Rule 15(c) by its [terms]

requires only sufficient notice such "that the party will not be prejudiced in mai[ntaining]

a defense on the merits."

The advisory committee note to the 1991 amendment --which, of course, pos[tdates]

Williams -- states that "[i]f the notice requirement is met within the Rule 4(m) pe[riod, a]

complaint may be amended at any time to correct a formal defect such as a misnomer [or]

misidentification" (emphasis supplied). Although the advisory committee note does n[ot]

explicitly mention service of process, it follows from the fact that the plaintiff [may]

9

properly serve a party with process until the complaint names that party as a defe

predicate to the misnomer line of cases) that the note envisions that the plaintiff

assuming appropriate notice is provided within the Rule 4(m) period, serve the defe

at any time, including after the expiration of the Rule 4(m) period.  That is, a pa

amend its pleadings to add a party although the party to be added was not actually

by the amending party with a complaint and summons within the Rule 4(m) period.

Having decided that actual service by the plaintiff is not a prerequisite

Rule 15(c)(3), the question then becomes what notice is sufficient to convey to the

defendant the knowledge that the plaintiff has instituted an action.  "The conclusi

growing number of courts and commentators is that sufficient notice may be deemed t

occurred where a party who has some reason to expect his potential involvement as a

defendant hears of the commencement of litigation through some informal means."  Ki

v. Bell of Pennsylvania, 748 F. Supp. 1136, 1141 (E.D. Pa. 1990); see, e.g., Berndt

Tennessee, 796 F.2d 879, 884 (6th Cir. 1986) (notice need not be formal); Eakins v.

710 F.2d 184, 187-88 (4th Cir. 1983) (same); Kirk v. Cronvich, 629 F.2d 404, 407-08

Cir. 1980) (same); Swartz v. Gold Dust Casino, Inc., 91 F.R.D. 543, 547 (D. Nev. 19

("The notice of the institution of the lawsuit required by Rule 15(c) need not be

formal.").  I need not go so far as to embrace Kinnally's liberal interpretation in

case, however, as the Carlinos actually received formal notice of Lundy's instituti

lawsuit when Trop World, within the period provided by Rule 4(m), served on them it

Party Complaint with Lundy's Complaint attached to it.

In sum, given the close interrelationship between notice and prejudice ge

and in Rule 15(c) specifically, at least when the newly named defendant has receive

formal notice of the commencement of the action, albeit via a cross-complaint, I co

that such notice will satisfy Rule 15(c)'s notice requirement if the defendant is n

prejudiced in maintaining a defense on the merits.  Cf. 6A WRIGHT ET. AL., FEDERAL PRACT

PROCEDURE § 1498, at 123 ("A finding that notice, although informal, is sufficient .

10

frequently [depends] upon determining whether the party to be added would be preju[...]

allowing relation back under the circumstances of the particular case.").  This app[...]

resists elevating technicalities over substance and defeating the policy that "`mer[...]

technicalities' . . . not stand in the way of consideration of a case on its merits[...]

Torres v. Oakland Scavenger Co., 487 U.S. 312, 316, 108 S. Ct. 2405, 2408 (1988).

I consider next whether the Carlinos would be prejudiced in defending aga[...]

Lundy's tort claim.

## 2.   Would the Carlinos Be Prejudiced?

The Carlinos argue in their brief that they would be prejudiced (although[...]

oral argument they conceded there would be no prejudice) because their initial inv[...]

in the case was simply to defend a contractual claim for indemnity and that to now [...]

[a] defense on a negligence theory would require a completely different legal strat[...]

well as discovery and investigation, all of which [Lundy] has already completed."

Third Party Appellee at 8, 12-13.  Nonbinding case law would support this contenti[...]

it were true):  prejudice may be established even though the defendant knows about [...]

involved in other, related actions if the defendant's lack of knowledge of that act[...]

it to conduct a factual inquiry different from the one it would have conducted had [...]

known of that action.  See Craig v. United States, 413 F.2d 854 (9th Cir.), cert. [...]

396 U.S. 987, 90 S. Ct. 483 (1969).[0]

---

[0]Cf. Bechtel, 886 F.2d at 652 (holding that to show prejudice the party opposing th[...]
amendment of a complaint "must show that it was unfairly disadvantaged or deprived [...]
opportunity to present facts or evidence which it would have offered had the . . . [...]
amendments been timely" (internal quotation omitted) (emphasis supplied)), quoted i[...]
v. Arco Chem. Co., 921 F.2d 484, 488 (3d Cir. 1990); Evans Prods. Co. v. West Am. [...]
736 F.2d 920, 923 (3d Cir. 1984) ("The principal test for prejudice . . . is whethe[...]
opposing party was denied a fair opportunity to defend and to offer additional evi[...]
. . . ." (citations omitted)); Deakyne v. Commissioners of Lewes, 416 F.2d 290, 300[...]
(3d Cir. 1969) ("Prejudice under [Rule 15] means undue difficulty in prosecuting a [...]
as a result of a change of tactics or theories on the part of the other party."); s[...]
6 WRIGHT ET. AL., FEDERAL PRACTICE AND PROCEDURE § 1498, at 126 ("[C]ourt[s] should not giv[...]
special treatment to the careless or myopic added defendant whose alleged prejudice[...]

11

The issue of prejudice, being primarily a question of fact, should be res by the district court in the first instance. See Woods, 996 F.2d at 886. In this the magistrate judge was responsible for initially deciding Lundy's Motion to Add C as Original Party Defendants. In granting the motion, the magistrate judge rejecte Carlinos' argument that they would be prejudiced if added as defendants (see App. 4 (Letter Br. of Third Party Defendant, at 2-4 (June 22, 1992))), finding instead tha "Carlino[s] will not be prejudiced by the amended complaint because as third party defendants, they have already engaged in the preparation of a defense in this actio Mem. Op., Civ. No. 91-3183(WGB), at 7 (D.N.J. July 7, 1992) (Rosen, Mag. J.), in Ap 477a. Given the overwhelming support in the record for the magistrate judge's conc

results from his own superficial investigatory practices or poor preparation of a c But at least when the facts relevant to one possible claimant do require a substant different and more burdensome investigatory effort or when the initial action is no sufficiently serious to warrant a full-fledged investigation, a party should be abl rely on the statute of limitations when that claimant does not interpose his claim time.").

12

sion,[0] I agree that the Carlinos suffered no prejudice on account of Lundy's belate

attempted amendment of his complaint to name them as defendants.[0]

[0]Substantial support for the magistrate judge's conclusion that the Carlinos were n
prejudiced exists on both factual and legal grounds:  there is not a great differen
any, between Trop World's third party cross-claims and Lundy's negligence claims.
amounts at stake are identical because Trop World sought full indemnification.  See
22a, 23a (Third Party Complaint, First Count ¶ 2; id., Third Count, ¶ 2).  Moreover
legal issues the Carlinos needed to research and the facts they needed to investiga
substantially the same because Trop World sought contribution from the Carlinos as
tortfeasor pursuant to the New Jersey Joint Tortfeasors Contribution Act, 2A N.J. S
ANN. § 53A-3 (1993), see App. 22a (Third Party Complaint, Second Count ¶ 2), and be
the Carlinos asserted a cross-claim predicated on the New Jersey Comparative Neglig
Act, 2A N.J. STAT. ANN. § 15-5.1 (1993), see App. 43a-44a (Answer to Third Party Com
at 4-5).  Both Trop World's contribution claim and the Carlinos' comparative neglig
cross-claim required the Carlinos to address the substance of Lundy's complaint and
discover the facts underlying it.

There is also ample support for the magistrate judge's conclusion that th
Carlinos had actually engaged in the preparation of a defense in the action that di
differ substantially from what his defense would have been had Lundy originally nam
as a defendant.  Most importantly, the Carlinos' counsel attended all the depositio
taken by the original parties.  See App. 140a-41a (Nurse Slusher); App. 173a-74a (N
Strang); App. 201a-03a (Dr. Greenberg); App. 233a-35a (Mrs. Greenberg); App. 246a-
(Verna Ayo).

[0]Of particular relevance to prejudice in a case such as this are the goals sought t
protected by statutes of limitations. See FED. R. CIV. P. 15(c), advisory committee'
-- 1966 amendment ("Relation back is intimately connected with the policy of the st
of limitations.").  On this note the Supreme Court has informed us that

> [s]tatutes of limitations are primarily designed to assure fairness to
> defendants.  Such statutes "promote justice by preventing surprises throu
> revival of claims that have been allowed to slumber until evidence has be
> lost, memories have faded, and witnesses have disappeared.  The theory is
> even if one has a just claim it is unjust not to put the adversary on not
> defend within the period of limitation and that the right to be free of s
> claims in time comes to prevail over the right to prosecute them." Order
> R.R. Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 348-49,
> Ct. 582, 586 (1944).  Moreover, the courts ought to be relieved of the bu
> trying stale claims when a plaintiff has slept on his rights.

Burnett v. New York Cent. R.R. Co., 380 U.S. 424, 428, 85 S. Ct. 1050, 1054 (1965);
National Iranian Oil Co. v. Mapco Int'l, Inc., 983 F.2d 485, 493 (3d Cir. 1992).  S
the exact same evidence, memories, and witnesses are pertinent to Lundy's original
Complaint and Trop World's Third Party Complaint as would be pertinent to Lundy's A
Complaint against the Carlinos, and since the district court was burdened with the
and cross-claim already, none of the interests sought to be protected by the applic
statute of limitations would be abridged were Lundy allowed to amend his complaint
the Carlinos as defendants.

13

Based on the foregoing, I conclude that the elements of Rule 15(c)(3)(A) all been met. It remains to be seen if the same holds for the elements of Rule 15(c)(3)(B).

### 3. Should the Carlinos Have Known Lundy Was Mistaken About Their Identity?

#### a. Was Sufficient Notice Provided by the Third-Party Complaint?

In order for an amendment under Rule 15(c)(3) to relate back, the party s the amendment must also demonstrate that "the party to be brought in by amendment . (B) knew or should have known that, but for a mistake concerning the identity of th proper party, the action would have been brought against the party." FED. R. CIV. P 15(c)(3)(B). The mistaken identity issue here can be separated into two subissues: is mistaken identity limited to cases of misnomer or improper naming or does it als extend to cases where the plaintiff was mistaken about the identity of a separate defendant? and (ii) did the Carlinos know, or should they have known, that but for mistake they would have been named as defendants from the outset? The majority dis of Lundy's claims without reaching the merits ostensibly because "Dr. Carlino [had] reason during the relevant period to believe that the Lundys had intended to sue hi Maj. Op. at 27.

14

Lundy contends that on a fair reading of Paragraphs 2 and 5-8 of his Comp[laint]
the Carlinos knew or should have known that the claims were equally applicable to t[hem]
that, but for a mistake concerning the employer of Nurse Slusher, that Lundy would [have]
named the Carlinos as defendants from the outset of the litigation.  Br. of Appella[nt at]
37.  Agreeing, the magistrate judge ruled that within the 120-day allowance of (the [Rule]
4(j) the Carlinos "should have been aware that but for a mistake concerning the
appropriate employer of Ms. Slusher, the initial action would have been brought dir[ectly]
against [them]."  Mem. Op., Civ. No. 91-3183(WGB), at 7 (D.N.J. July 7, 1992) (Rose[nn,]
J.), in App. at 477a.  The district court purported to subject the magistrate judge['s]
ruling that the Carlinos should have known they were intended defendants to the "cl[early]
erroneous or contrary to law" standard of Federal Rule of Civil Procedure 72(a).  [Mem. Op.]
at 14-15 (App. 622a-23a); see Snow Machines, Inc. v. Hedco, Inc., 838 F.2d 718, 727 [(3d]
Cir. 1988).

---

[0]These paragraphs allege:

> 2.   At all times material hereto, Defendant acted, and failed to act, by [and]
> through its agents, servants, work persons and employees in the course an[d scope]
> of employment.
> . . .
> 4.   At all times material hereto, Defendant, as the owner in possession [of a]
> hotel, restaurant and gambling complex open to the public, was under a du[ty to]
> its business invitees to have proper first aid facilities and personnel
> available to its business invitees and was also under a duty to its busin[ess]
> invitees to take reasonable action to render first aid to such business
> invitees, when necessary.
> 5.   At all time[s] material hereto, Defendant knew, and had reason to kn[ow,]
> that Plaintiff had suffered a cardiac arrest and required first aid, oxyg[en and]
> other medical attention.
> 6.   Defendant negligently, recklessly and carelessly failed to perform i[ts duty]
> to Plaintiff by failing to have such emergency-first aid facilities, oxyg[en and]
> medical personnel available.
> 7.   Although Defendant telephoned for an ambulance to take Plaintiff to [the]
> hospital, it otherwise rendered no first aid or emergency medical treatme[nt]
> whatsoever to Plaintiff, despite his crucial need for same.
> 8.   Due to all the foregoing, Defendant increased the likelihood of harm [to]
> Plaintiff.

App. 10a-11a (Complaint).

15

Laboring under what it believed to be a "clearly erroneous" standard of r

as to the facts, the district court reversed the magistrate judge's conclusion pure

legal grounds.[0]  In particular, the district court held that Rule 15(c)(3) does not

a party to add a "new defendant," but instead allows only the correction of a

"misidentification of a defendant."  Mem. Op. at 22, 24-25 (App. at 630a, 632a-33a)

developed infra at 19-19, this ruling is contrary to precedent binding on the distr

court, and the majority does not hold otherwise, see Maj. Op. at 26 n.14.  Alternat

the district court concluded that a Third Party Complaint cannot as a matter of law

suffice to put the party to be added on notice that the plaintiff had made a mistak

identity.  See Mem. Op. at 23-25. I have explained my reasons for disagreeing with

conclusion supra in Part 8.

The majority does not rest its conclusion on either of these two legal gr

though.  Since the district court left the magistrate judge's finding of fact undis

(that is, adopted it as correct for our purposes), as the majority acknowledges, se

Op. at 28 n.15, we are to review the factual conclusion that the Carlinos should ha

known that they were intended defendants for clear error.  See Varlack v. SWC Carib

Inc., 550 F.2d 171, 174 (3d Cir. 1977) (establishing that the question of whether t

conditions of Rule 15(c), including whether the party to be added "knew or should h

---

[0]While the district court did describe the magistrate judge's conclusion that Rule
15(c)(3) had been satifisfied as being "clearly erroneous," see Maj. Op. at 25 n.13
Op. at 25, the context of the sentence leaves no doubt that the court was referring
magistrate judge's conclusions of law, not his factual findings.  The majority does
indicate otherwise.  See Maj. Op. at 11 ("Because the district court's decision reg
Rule 15(c) was based on the court's interpretation of the Federal Rules of Civil
Procedure, we exercise plenary review of this decision . . . .").  I am puzzled, th
the majority's assertion that it owes "no deference" to the magistrate judge's find
fact.  See Maj. Op. at 25 n.13.  Insofar as the district court adopted (that is, di
disapprove of) the magistrate judge's findings of fact, we review them for clear er
That is, while the district court may review the magistrate judge's findings of fac
novo under Federal Rule of Civil Procedure 72(b), an appellate court may not, for t
obvious reason that we are reviewing the district court's, not the magistrate judge
findings of fact, and such review is governed by the clearly erroneous standard.

16

known that, but for a mistake concerning the identity of the proper party, the acti

would have been brought against him," have been met is a question of <u>fact</u> subject t

review for <u>clear error</u>).  Accordingly, the majority seems to be holding that the

magistrate judge clearly erred in his finding, <u>see</u> Maj. Op. at 28 n.15, although it

to point to any contrary evidence in the record besides the allegations in Lundy's

Complaint and Lundy's delay.

### (1)   Adding a Party Under Rule 15(c)(3)(B)

Regarding the first issue, Rule 15(c) on its face applies to the changing

party, not just to correcting a misnomer.  The plain language of the rule states th

requirements of Rule 15(c)(3) apply to "amendment[s] chang[ing] the party <u>or</u> the na

the party" and therefore Rule 15(c) most clearly contemplates that changing a party

relate back. Since the Rule on its face draws no distinction between the two scenar

feel constrained to conclude that Rule 15(c)(3) allowed Lundy to relate back the <u>ac</u>

of the Carlinos as defendants.  <u>See</u> <u>Business Guides, Inc. v. Chromatic Communicatio</u>

<u>Enters., Inc.</u>, 498 U.S. 533, 111 S. Ct. 922, 928 (1991) (holding that courts are to

the Federal Rules of Civil Procedure their plain meaning'" (quoting <u>Pavelic & LeFlo</u>

<u>Marvel Entertainment Group</u>, 493 U.S. 120, 123, 110 S. Ct. 456, 458 (1989))).

Adding a party is essentially no different from changing a party.  The mi

difference between the addition and the replacement of a party is whether the origi

defendant is dismissed in addition to the new defendant being added, which is not i

<u>facto</u> conclusive as to what the defendant to be added knew or should have known con

whether the plaintiff was mistaken about the newly-added defendant's identity.  Mos

courts have thus held that a new party may be added or substituted for another.[0]  M

---

[0]<u>See</u> <u>Garvey</u>, 993 F.2d at 778 n.6, 783 n.17 (allowing plaintiff to amend his complai
add the United States as a defendant under the Federal Tort Claims Act where plaint
initially sued individual federal officials under a <u>Bivens</u> theory); <u>Fromson v. Citi</u>
<u>Inc.</u>, 886 F.2d 1300, 1303-04 (Fed. Cir. 1989) (allowing the plaintiff to relate bac

17

importantly, this Circuit has interpreted Rule 15(c) to allow for the <u>addition</u> of a

party.  <u>See</u> <u>Bloomfield Mech. Contracting, Inc. v. Occupational Safety & Health Revi</u>

amendment of his complaint to add the two owners of a corporation which already was defendant as defendants); <u>Berndt</u>, 796 F.2d at 883-84 (allowing the plaintiff to sub state officials for the state and a state agency in a § 1983 case); <u>Itel Capital Co</u> <u>Cups Coal Co.</u>, 707 F.2d 1253, 1258 & n. 9 (11th Cir. 1983) (allowing the plaintiff relate back the amendment of his complaint to add a new defendant after the limitat period had expired:  "we read the word `mistake' in Rule 15(c) liberally."); <u>Heinly</u> <u>Queen</u>, 146 F.R.D. 102, 107 (E.D. Pa. 1993) ("The `mistake condition' in [the] third element is not limited to cases of misnamed or misdescribed parties, rather the Rul widely-understood to allow the addition of new parties that were never originally r described." (citing <u>Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc.</u>, 801 F. Supp. 1 1457 (E.D. Pa. 1992)); <u>Smith v. TW Servs., Inc.</u>, 142 F.R.D. 144, 149-50 (M.D. Tenn. (allowing plaintiff to add a separate defendant not named in the initial complaint) <u>Swartz</u>, 91 F.R.D. at 547 (holding that a "new defendant should have known that but mistake concerning identity the action would have been brought against him . . . `w a party who may be liable for the actionable conduct alleged in the Complaint was o as a party defendant.'" (quoting <u>Williams v. Avis Transp. of Can., Ltd.</u>, 57 F.R.D. (D. Nev. 1972))); 6A Wright et al., Federal Practice and Procedure § 1498, at 126-29 ("The `changing' [in Rule 15(c)] has been liberally construed by the courts, so that amer simply <u>adding</u> or dropping parties, as well as amendments that actually substitute defendants, fall within the ambit of the rule. . . . [T]here is no justification fo restrictive interpretation of the word `changing' that would require a plaintiff to among defendants." (emphasis supplied)); <u>cf.</u> <u>Loudenslager v. Teeple</u>, 466 F.2d 249, (3d Cir. 1972) (allowing the plaintiff to amend his complaint to substitute the per representative of the decedent's estate for the decedent); <u>see also</u> 6A Wright et al., Practice and Procedure § 1498, at 103-04 (stating that Rule 15(c) "alters the general r that new parties . . . cannot be <u>added</u> to an action by amendment after the applicab limitations period has expired" (emphasis supplied)), <u>cited with approval in</u> <u>Bloomf</u> <u>Mech. Contracting, Inc. v. Occupational Safety & Health Review Comm'n</u>, 519 F.2d 125 (3d Cir. 1975); <u>Dandrea v. Malsbary Mfg. Co.</u>, 839 F.2d 163, 166 (3d Cir. 1988) (dec whether plaintiff's amendment changed the party or merely updated the party's name) <u>Mitchell v. Hendricks</u>, 68 F.R.D. 564 (E.D. Pa. 1975) (allowing plaintiff's amendmen his complaint to relate back where plaintiff mistakenly named the wrong person as t defendant and the newly named defendant had received informal notice of plaintiff's initial complaint).  <u>But</u> <u>cf.</u> <u>Worthington v. Wilson</u>, 8 F.3d 1253, 1256-57 (7th Cir. (reading Rule 15(c) to exclude naming a different party "due to a lack of knowledge their identity" rather than as to their correct name); <u>Campbell v. Ward</u>, 792 F. Sup 1150, 1153 (E.D. Mo. 1992) (same); <u>Wells v. HBO & Co.</u>, 813 F. Supp. 1561, 1567 (N.D 1992) (denying plaintiff's motion to amend complaint where plaintiff had deliberate sued a party whose identity plaintiff had known from the outset).
      The many other courts to have recognized the "identity of interest" excep Rule 15(c) have also necessarily held that Rule 15(c) allows for the addition of a rather than only for the correction of a party's name.  <u>See</u>, <u>e.g.</u>, <u>In re Allbrand A</u> <u>ance & Television Co.</u>, 875 F.2d 1021, 1025 (2d Cir. 1989).  <u>See generally</u> Wright et Federal Practice and Procedure § 1459.

Comm'n, 519 F.2d 1257, 1262 (3d Cir. 1975) (explaining, in the context of the addit[ion of]

other parties, that the purpose of Rule 15(c) "is to ameliorate the effect of a sta[tute of]

limitations where the plaintiff has sued the wrong party but where the right party [received]

adequate notice of the institution of the action" (emphasis supplied)).

Allowing for the addition of a new party is particularly compelling in

circumstances where, as here, the need for the addition was caused by the plaintiff[']s

misunderstanding concerning the fact that two separate legal entities were operati[ng]

within the same physical structure.  Certainly the separate legal entity (in this c[ase the]

Carlinos), especially when it is not normally expected to be engaged at the premise[s, as]

presently is the case), has reason to know that it has not been named because of ig[norance]

of its separate legal existence. That is true even more so in a case such as this w[here]

the plaintiff was unconscious during the happening of the relevant events and hence

obviously could not have been aware of such legal niceties.


### (2)    What the Carlinos Should Have Known

As to the second subissue, concerning what the Carlinos knew or should ha[ve]

known, Lundy asserts that the Carlinos should have known that, but for Lundy's mist[ake]

concerning Nurse Slusher's employer, Lundy would have named them as defendants wher[e he]

first filed his complaint.  I agree with Lundy that the magistrate judge did not cl[early]

err.  First, Lundy's Complaint indicated that he was proceeding under a theory of r[espon-]

deat superior.  See App. 10a (Complaint ¶ 2).  Given the lax nature of notice plead[ing]

under the Federal Rules of Civil Procedure[0] and the circumstance that Lundy was wit[hout]

---

[0]Federal pleading rules rely only on "notice pleading."  See FED. R. CIV. P. 8(a)(2) [(a]
complaint shall set forth "a short and plain statement of the claim showing that th[e]
pleader is entitled to relief" (emphasis supplied)).  The Supreme Court rehearsed t[he]
proper role of pleadings in Conley v. Gibson, 355 U.S. 41, 47–48, 78 S. Ct. 99, 103[–04]
(1957):

> [T]he Federal Rules of Civil Procedure do not require a claimant to set o[ut in]
> detail the facts upon which he bases his claim.  To the contrary, all the

19

his faculties during the relevant time frame, it was not incumbent upon Lundy to na

particular employees involved and not involved in his medical emergency, the majori

implications notwithstanding, see Maj. Op. at 26 n.14 (apparently conceding that, h

Lundy expressly named Nurse Slusher, the Carlinos should have known of the mistake)

In addition, Lundy alleged that the substance of Trop World's negligence

failure to provide proper first aid facilities and medical treatment. See App. 11a

(Complaint ¶¶ 5-7). Thus, had Nurse Slusher and Dr. Carlino been employees of Trop

instead of independent contractors, anyone would immediately conclude that Trop Wor

> require is "a short and plain statement of the claim" [, FED. R. CIV. P.
> 8(a)(2),] that will give the defendant fair notice of what the plaintiff'
> is and the grounds upon which it rests. . . . Such simplified "notice ple
> is made possible by the liberal opportunity for discovery and the other p
> procedures established by the Rules to disclose more precisely the basis
> claim and defense and to define more narrowly the disputed facts and is-
> sues. . . . The Federal Rules reject the approach that pleading is a game
> skill in which one misstep by counsel may be decisive to the outcome and
> the principle that the purpose of pleading is to facilitate a proper deci
> the merits.

Id. (citation substituted for footnote); see Universe Tankships, Inc. v. United Sta
528 F.2d 73, 75 (3d Cir. 1975) (notice pleading requires a party only to "disclose
adequate information as the basis of his claim for relief" (internal quotation omit
see also, e.g., Quinones v. United States, 492 F.2d 1269, 1273 (3d Cir. 1974) ("`a
complaint should not be dismissed for failure to state a claim unless it appears be
doubt that the plaintiff can prove no set of facts in support of his claim which wo
entitle him to relief'" (quoting Conley, 355 U.S. at 45-46, 78 S. Ct. at 102)).

The Appendix of Forms to the Federal Rules of Civil Procedure, Form 9, is
illustrative of the bare-bones allegations recommended by the Rules in a negligence
action. That form calls for an "[a]llegation of jurisdiction," a brief description
underlying event, a brief description of plaintiff's injuries, and a prayer for rel
For this reason I remonstrate that the majority in effect relies on the fact that L
complied with the lax standards established by the Rules, rules designed to prevent
in pleading technicalities from displacing resolutions on the merits, to argue that
plaintiff did not provide adequate notice. To the contrary, I find these lax stand
important because the Carlinos should have known that under the federal rules Lundy
not bound by the exact allegations or the precise theories encapsulated in his Comp
and thus they could not have reasonably relied on other theories of liability, addi
facts, or additional parties not being added later. In sum, the philosophy of fede
notice pleading is an essential backdrop when adjudging what a potential defendant
have known," and what the Carlinos "should have known" when they were served with a
of Lundy's complaint even though no employee of theirs was specifically named there

should have known that in his complaint Lundy alleged that Nurse Slusher's and/or [

Carlino's negligence caused Lundy's injuries.  The fact that another entity was Nur

Slusher's employer does not take much away from the force of the conclusion that he

employer was fully implicated in the lawsuit.  Since the Carlinos knew that they ar

Trop World were responsible for Nurse Slusher and the medical facilities at Trop Wo

the Carlinos should have known that (1) Nurse Slusher's alleged negligence and Trop

World's alleged negligent failure adequately to prepare for medical emergencies was

gravamen of Lundy's complaint (the merits of this claim are, of course, irrelevant

juncture); (2) Lundy was simply confused about the employer of Nurse Slusher; and (

Lundy was unaware that Trop World had delegated to the Carlinos the responsibility

provide medical care to patrons and guests. Had the Carlinos, charged with familiar

with the events of that evening, genuinely considered whether they were intended

defendants when served by Trop World, they would have concluded "very likely," and

that satisfies Rule 15(c)(3)(B).

In my view, no competent attorney cognizant of the federal rules reading

complaint and aware of the facts as known to the Carlinos would have thought the Ca

were completely off the hook.  One cannot expect Lundy to have possessed the presci

discover that Nurse Slusher was an independent contractor rather than an employee b

filing his complaint.  The majority does not suggest why the Carlinos could reasona

expect that Lundy knew this fact and was merely making a "strategic" choice not to

responsible entity.  It will be when this opinion is filed that the Carlinos for th

time since receiving Trop World's Third Party Complaint will be able to breathe a s

relief.

The cases the majority relies upon are readily distinguishable.  Lovelace

O'Hara, 985 F.2d 847, 850-51 (6th Cir. 1993) held that the defendant in an action u

U.S.C.A. § 1983 (1981) had no reason to believe that the plaintiff would amend her

complaint to sue him in his individual capacity because the plaintiff's original co

21

unequivocally "evidence[d] an intentional choice . . . to bring an official capacit

suit." There the plaintiff had known of the defendant's identity and exact involvem

the events responsible for the case all along.  Moreover, the court stressed that t

amendment would have prejudiced the defendant, since the amendment would have expos

defendant to personal liability, altered the elements of recovery and defense, and

required major changes in pleading, discovery, trial preparation, and selection of

witnesses. Similarly, in Curry v. Johns-Manville Corp., 93 F.R.D. 623, 626-27 (E.D.

1982) the court held that a third-party claim by the original defendant did not pro

the third-party defendant with reason to know that plaintiff may sue it where plain

actually knew the identity of the third-party defendant and its part in the underly

events long before the expiration of the statute of limitations.  Those cases share

common rationale that, where the defendant that the plaintiff seeks to add knew tha

plaintiff was aware long before the statute of limitations expired both of that def

dant's particular role in the underlying events and of its separate legal identity,

defendant was reasonably led to believe that the plaintiff deliberately chose not t

it as a defendant from the outset. That rationale is inapposite to this case.


### b.  The Matter of Lundy's Delay in Amending His Complaint

Moreover, I am driven to conclude that Lundy's lengthy, unexcused delay i

amending his complaint does not affect the analysis of whether the Carlinos should

known that, but for a mistaken identity, Lundy would have named them in his origina

complaint.  Although the Carlinos do not phrase it as such, they essentially argue

Lundy inexcusably neglected to name them as defendants for approximately eight mont

after Lundy learned that the Carlinos were Trop World's independent contractors.  S

of Third Party Appellee at 8-9, 13.[0]  The district court espoused a similar legal t

---

[0]There is no denying that Lundy was sluggish amending his complaint.  The record sh
that on September 12, 1991, Trop World filed its Third Party Complaint against the

22

and the majority also seems to latch onto it.  <u>See</u> Maj. Op. at 27; Slip Op. at 23,

of Appellant at 67.

Some courts of appeals specifically include undue delay as a component of

"should have known" prong of the Rule 15(c) analysis.  But those cases are in the m

very different, because in them the parties to be added never had notice during the

4(m) period that they were intended defendants in the action in question, and the

plaintiff's procrastination occurred during the limitations period.[0]

---

Carlinos.  <u>See</u> App. 21a–39a.  A cursory reading of the attached Contract for Medica
Services, particularly in light of the common knowledge that medical doctors are of
independent contractors, would have revealed to a reasonable attorney that the Carl
were independent contractors who were responsible for providing nursing services at
World during the time that Nurse Slusher provided medical assistance to Lundy.  <u>See</u>
29a, 34a (Contract for Medical Services at 2, 7).  Moreover, on both December 26 an
December 31, 1991, the Carlinos' counsel informed Lundy's counsel that Nurse Slushe
longer worked for the <u>Carlinos</u>.  App. 455a (Letter of 12/26/91); <u>id.</u> 456a (Letter o
12/31/91).  Finally, Lundy deposed Nurse Slusher and the Greenbergs in mid March, 1
Nevertheless, Lundy did not seek to amend his complaint to add the Carlinos as defe
until May 28, 1992, about eight months after Lundy should have known that the Carli
were independent contractors, about five months after he should have known that the
Carlinos employed Nurse Slusher, and over two months after he had actual knowledge
Nurse Slusher's employment situation.

At oral argument Lundy tried to explain away the delay by reference to hi
of Rule 11 sanctions.  <u>See</u> F<small>ED</small>. R. C<small>IV</small>. P. 11 (authorizing sanctions against parties
asserting groundless claims).  But that does not illuminate the reason for the two-
delay after Lundy had deposed his final fact witness. Moreover, that answer does no
explain why there was any more reason to fear Rule 11 sanctions for naming the Carl
already parties to the litigation, as defendants as opposed to naming Trop World as
defendant when he initiated his suit.

[0]<u>See</u> <u>Keller v. Prince George's County</u>, 923 F.2d 30, 34 (4th Cir. 1991) (reasoning t
because plaintiff did not file a complaint against the defendants before the runnin
the limitations period, although she was aware of their identity and involvement fr
day the underlying events occurred, they had no reason to suspect that but for a mi
as to their identity she would have originally named them); <u>Kilkenny v. Arco Marine</u>
800 F.2d 853, 856–57 (9th Cir. 1986) (refusing to allow plaintiff to name the origi
defendant's subsidiaries as defendants in an untimely amendment because the subsidi
had no reason to know plaintiff was mistaken about their identity: the plaintiff ha
informed by the original defendant two years before the statute of limitations ran
the subsidiaries were probably the proper defendants and the plaintiff had sued the
subsidiaries in another forum, which suit was dismissed after 14 months (nine month
before the running of the statute of limitations) for lack of prosecution), <u>cert. c</u>
480 U.S. 934, 107 S. Ct. 1575 (1987).

23

More on point is <u>Seber v. Daniels Transfer Co.</u>, 618 F. Supp. 1311, 1313-1
Pa. 1985). There the court allowed the plaintiff to relate back his second amended
complaint filed on August 6, 1984, to the date of his original complaint, March 30,
The statute of limitations on plaintiff's age discrimination claim expired on April
1984. The court found there was no "undue delay" despite the four months it took
plaintiff to amend his complaint because "counsel underwent a contentious period of
discovery during which it may have been difficult to identify all responsible parti
their positions." <u>Id.</u> at 1314. The court did not find the delay dispositive, but
instead that the "plaintiff here may take advantage of a rule designed to prevent
technical applications of the statute of limitations where it appears that responsi
parties will not be unfairly prejudiced in defending against an otherwise untimely
lawsuit." <u>Id.</u>

As the Court of Appeals for the Tenth Circuit sagaciously pointed out in
<u>Anderson v. Deere & Co.</u>, 852 F.2d 1244, 1247-50 (10th Cir. 1988),[0] so long as the
defendant had notice, was not prejudiced, and should have known of plaintiff's mist
within 120 days of the expiration of the statute of limitations, the language of Ru
15(c) does not distinguish between timely and untimely amendments. <u>See</u> FED. R. CIV.
15(c) advisory committee note -- 1991 amendment (assuming the other requirements ar
"a complaint may be amended <u>at any time</u> to correct a formal defect such as a misnom
misidentification" (emphasis supplied)). Conspicuously absent from Rule 15(c) is a
that the complaint must be amended within the Rule 4(m) period -- it speaks only of
notice, lack of prejudice, and reason to know of a mistake within that time frame.
<u>supra</u> at 10. Obviously receipt of service after amendment of the complaint would p

---

[0]<u>Anderson</u> held that the district court improperly refused to allow plaintiffs to re
back their amendment of their complaint to name the parent of the original defendan
defendant. The plaintiffs had learned of the parent's identity only after the limi
period had expired, but then they failed to seek to amend their complaint for nine
and waited an additional two months to serve the new defendant.

24

all three, but it is not a prerequisite.  The courts to hold otherwise neglect the

policy supporting the Rules and essentially punish the plaintiff when no prejudice

results to the defendant.

Rule 15(c) is subject to Rule 15(a), which provides that a court shall fr

give leave for a party to amend its pleadings "when justice so requires."  That

subsection, not Rule 15(c), is the correct one to deal with the delay aspect of the

amendment.  No doubt undue delay causing prejudice could bar Lundy from amending hi

complaint to add a newly-named defendant under Rule 15(a) because in such situation

justice would not require it.  See, e.g., Adams v. Gould Inc., 739 F.2d 858, 867-68

Cir. 1984) ("[U]nder the liberal pleading philosophy of the federal rules as incorp

in Rule 15(a), an amendment should be allowed whenever there has not been undue del

faith on the part of the plaintiff, or prejudice to the defendant as a result of th

delay.").  This Court has often held that, absent undue or substantial prejudice, a

amendment should be allowed under Rule 15(a) unless "denial [can] be grounded in ba

or dilatory motive, truly undue or unexplained delay, repeated failure to cure defi

by amendments previously allowed or futility of amendment."  Bechtel v. Robinson, 8

644, 652-53 (3d Cir. 1989) (internal quotation omitted); Heyl & Patterson Int'l, In

F. D. Rich Housing of V.I., Inc., 663 F.2d 419, 425 (3d Cir. 1981) (same), cert. de

455 U.S. 1018, 102 S. Ct. 1714 (1982).

Similar in result is Skehan v. Board of Trustees, 590 F.2d 470 (3d Cir. 1

cert. denied, 444 U.S. 832, 100 S. Ct. 61 (1979), in which the district court had r

addressed Rule 15(c) since it refused to allow an amendment under Rule 15(a) regard

whether Rule 15(c) would countenance it. There we held that "[a]lthough district co

are required to allow amendments under the terms of [Rule 15(a)], certain factors,

undue prejudice to the other party and undue delay by the movant, have been found t

establish sufficient justification for the denial of such motions."  Id. at 492 (em

supplied).[0]  That is because "prejudice to the nonmoving party is the touchstone fo

denial of the amendment."  <u>Arco Chem. Co.</u>, 921 F.2d at 488 (quoting <u>Bechtel</u>, 886 F.

652) (internal quotations omitted); <u>see</u> <u>Evans Prods. Co. v. West Am. Ins. Co.</u>, 736

920, 923 (3d Cir. 1984) ("The primary consideration in determining whether leave to

under FED. R. CIV. P. 15(b) should be granted is prejudice to the opposing party.").

as discussed above, <u>see</u> <u>supra</u> Part 11, the Carlinos were not prejudiced by Lundy's

Moreover, this Court has repeatedly stated outright that unexcused delay

unaccompanied by real detriment to the defendant or to the judiciary does not const

undue delay.[0] That is because undue delay refers solely to delay in the proceedings

---

[0]<u>See</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962) (holding that abs
"<u>undue delay</u>, bad faith or dilatory motive on the part of the movant, repeated fail
cure deficiencies by amendments previously allowed, <u>undue prejudice</u> to the opposing
by virtue of the amendment, futility of the amendment, etc.," leave to amend shoul
freely given (emphasis supplied)); <u>Lorenz v. CSX Corp.</u>, 1 F.3d 1406, 1414 (3d Cir.
("In the absence of substantial or undue prejudice, denial instead must be based on
faith or dilatory motives, <u>truly undue or unexplained delay</u>, repeated failures to c
deficiency by amendments previously allowed, or futility of amendment." (emphasis
supplied)) (affirming district court's denial of an amendment sought three years af
initiation of the action, at which time plaintiff already knew most of the relevant
and two years after her second amendment of the complaint, at which time she probab
all the facts); <u>see also</u> 3 JAMES WM. MOORE & RICHARD D. FREER, MOORE'S FEDERAL PRACTICE ¶15.0
at 15-49 (2d ed. 1993) (stating that leave to amend should not be granted if the mo
party has acted for the purpose of delay, the opposing party will be unduly prejudi
the trial of the issues will be unduly delayed); <u>id.</u> ¶15.08[4], at 15-69 to 75 ("Th
common reasons for denying leave to amend are that the amendment will result in <u>und</u>
<u>prejudice</u> to the other party, is <u>unduly delayed</u>, is offered in bad faith or for dil
purposes, or that the party has had sufficient opportunity to state a claim but has
failed" (emphasis supplied, footnotes omitted)).
[0]<u>See</u> <u>Cornell & Co., Inc. v. Occupational Safety & Health Comm'n</u>, 573 F.2d 820, 823
Cir. 1978) ("Delay alone . . . is an insufficient ground to deny an amendment, unle
delay unduly prejudices the non-moving party."); <u>Adams</u>, 739 F.2d at 868 ("The passa
time, without more, does not require that a motion to amend a complaint be denied;
however, at some point, the delay will become `undue,' placing an unwarranted burde
the court, or will become `prejudicial,' placing an unfair burden on the opposing
party."); <u>Deakyne v. Commissioners of Lewes</u>, 416 F.2d 290, 300 n.19 (3d Cir. 1969)
not believe delay alone is a sufficient measure of prejudice[;] the element of dela
pertinent only to the extent that it combines with some extrinsic occurrence which
about actual and significant prejudice to the opponent." (internal quotation omitte
<u>see also</u> 3 JAMES WM. MOORE & JO D. LUCAS, MOORE'S FEDERAL PRACTICE ¶ 15.08[4], at 15-76 (2d
1994) ("It should be emphasized, however, that while laches and unexcused delay may

26

to delay in amending the pleadings.[0]  The animating spirit of Rule 15, in short, do

sanction a ruling that would punish a party for delaying an amendment to the compl

See Anderson, 852 F.2d at 1248-49 & n. 15 (suggesting, though, that Rule 11 sancti

be appropriate).

To summarize, in this case the Carlinos suffered no actual prejudice, and

amendment having occurred before trial was scheduled, there was no undue delay in t

proceedings. Hence Lundy's delay in amending his complaint to name the Carlinos as

defendants is completely beside the point. Consequently, I conclude that the distri

court should have allowed Lundy to amend his complaint to add the Carlinos as origi

party defendants.[0]

As a final note on the delay factor, it has not eluded me that the Carlin

intent on not getting themselves involved in this lawsuit.  At no time did they se

receive assurances that Lundy would not add them as defendants.  For this reason, I

believe the delay was material to what the Carlinos should have known:  once having

put on notice during the limitations period, the absence of a quick amendment did n

them off notice.  Cf. Kilkenny, 800 F.2d at 857 (plaintiff was informed of the prop

defendants long before expiration of the limitations period) ("A plaintiff's failur

amend its complaint to add a defendant after being notified of a mistake concerning

_____

proposed amendment, delay alone, regardless of its length, is not enough to bar it

other party is not prejudiced.").

[0]See Boileau v. Bethlehem Steel Corp., 730 F.2d 929, 939 (3d Cir. 1984) ("[T]he del

exception in amending the complaint refers to delay in the actual proceeding in whi

complaint occurs, not delay in bringing suit."), cert. denied, 469 U.S. 871, 105 S.

221 (1984); Adams, 739 F.2d at 868-69 (stating that "undue delay" refers to placing

unwarranted burden on the court" and holding that plaintiff's delay in amending the

complaint to add a new legal theory until after defendant was granted summary judgm

this Court on an interlocutory appeal did not constitute "undue delay").

[0]I agree with the majority's reading of New Jersey law concerning relation back of

pleading amendments, see Maj. Op. at 27-29.  See Lawlor v. Cloverleaf Memorial Park

56 N.J. 326, 266 A.2d 569, 576-79 (1970); Greco v. Valley Fair Enters., 105 N.J. Su

582, 253 A.2d 814, 815-16 (App. Div. 1969); DeSisto v. City of Linden, 80 N.J. Supe

193 A.2d 870, 874-75 (Law Div. 1963), and thus concur that Lundy has not brought hi

within Rule 15(c)(1).

27

identity of a proper party . . . <u>may</u> cause the unnamed party to conclude that it wa[s] named because of strategic reasons rather than as a result of plaintiff's mistake."[ ] (emphasis supplied)); <u>Potts v. Allis-Chalmers Corp.</u>, 118 F.R.D. 597, 608-09 (N.D. I[ll.] 1987) (same).

Moreover, considering the parties' repeated and close interactions, the C[arlinos] could easily have set their minds at ease, but did not, perhaps in the hope that th[ey] would obtain the outcome the majority now hands them. Hence I do not agree with th[e] majority that the Carlinos' suspicions evaporated over time (even assuming that wer[e] relevant), or, indeed, with its hyperbole that the Carlinos "had affirmative reason[ to] believe that the Lundys did not wish to assert liability against [them]." Maj. Op. [at]

Based on the foregoing, I would vacate the district court's order and dec[ision] denying Lundy's motion to relate back the amendment of his pleadings to add the Car[linos] as original party defendants, and remand with instructions to reconsider the magist[rate] judge's recommendation using the proper legal standards.

## II. Duties a Landowner Owes a Business Invitee in New Jersey

Although I concur with the majority in its disposition of Lundy's claim a[gainst] Trop World in Part III.A of the majority opinion, I write separately to express my [ ] disagreement with the majority's conclusion in Part III.B that under New Jersey to[rt law] Trop World would be entitled to summary judgment even if Nurse Slusher had been its [ ] employee. <u>See</u> Maj. Op. at 16-17, 19-20. Although the precise holding reached by t[he] majority escapes me, <u>see</u> <u>infra</u> at 37-37, the majority appears to conclude that Trop[ World] fully satisfied its duties toward Lundy when it called for emergency help.

Because I conclude that Trop World was under a duty to take <u>reasonable</u> <u>affirmative steps</u> to assist Lundy when he suffered a cardiac arrest <u>in addition to</u> [ ] summoning emergency care, a position the majority at points appears to accept hypothetically to be the law, <u>see</u> Maj. Op. at 15-16, 20, I do not believe that New [ ]

28

Jersey's Good Samaritan Act, 2A N.J. STAT. ANN. § 62A-1, would shield Trop World (ac

to the majority's hypothetical) from liability were it Nurse Slusher's employer, or

Carlinos from liability had they effectively been made defendants in this case.  I

believe that the question whether Nurse Slusher behaved reasonably under the circum

when she refused to retrieve the intubation kit from her office when Dr. Greenberg

requested it is a question a jury should answer.


## A.   General Principles of New Jersey Tort Law

Absent a duty, a party cannot be held liable for negligent conduct under

principles of New Jersey negligence law. See Weinberg v. Dinger, 106 N.J. 469, 524

366, 373-74 (1987).  In New Jersey, the question whether a duty exists is a matter

and rests largely on questions of fairness and public policy.  Cheng Lin Wang v. Al

Ins. Co., 125 N.J. 2, 592 A.2d 527, 534 (1991); Kelly v. Gwinnell, 96 N.J. 538, 544

A.2d 1219, 1222 (1984).  "`The inquiry involves a weighing of the relationship of t

parties, the nature of the risk, and the public interest in the proposed solution.'

Lin Wang, 592 A.2d at 534 (quoting Kelly, 96 N.J. at 544, 476 A.2d at 1222).  I bea

mind that the New Jersey Supreme Court values flexibility, see Wytupeck v. Camden,

450, 462, 136 A.2d 887 (1957), and that in New Jersey the question whether or not a

exists will depend on the facts of each case, Chen Lin Wang, 592 A.2d at 534.

New Jersey has set the standard of care a landowner owes another based o

relationship or status between the parties.  See Snyder v. I. Jay Realty Co., 30 N.

153 A.2d 1, 5 (1959).  New Jersey distinguishes among invitees, who "first come by

invitation, express or implied;" licensees, "who are not invited but whose presence

suffered;" and trespassers, who "are neither invited nor suffered."  Id. (internal

quotations omitted).  All parties agree that Lundy was a business invitee. See Br.

Appellant at 17; Br. of Appellee at 13.  With this background in mind, I will tackl

29

formidable question whether a jury could find that the Carlinos (or Trop World, ass[...] it was Nurse Slusher's employer) breached a standard of care they owed to Lundy.[0]

### B. Duties Arising from the Landowner-Invitee Relationship

Neither the parties nor I have found any decision by the New Jersey Supre[...] Court, or any other New Jersey court, treating the question presented, namely, the [...] of a business' duty, if any, to aid or assist a business invitee when an invitee re[...] emergency aid through no fault of the landowner.[0]  In this predicament I cannot hel[...] resort to treatises and decisions in sister jurisdictions to divine how the New Jer[...] Supreme Court would rule, keeping in mind its general policies toward tort liabilit[...]

As the majority notes, the early common law of England, later transposed [...] United States, did not recognize a duty to rescue or assist another who was too ill[...] take care of him-or herself.  A sense of rugged individualism combined with the har[...] realities of industrialization formed an impenetrable shield of immunity around all[...] failed to help, even those who could, with the greatest of ease, prevent the most v[...]

---

[0]I note that Lundy has not proffered any evidence that Trop World advertised the availability of medical services on the premises and that he patronized Trop World [...] basis.  Thus the majority does not consider to what extent, if any, these factors w[...] influence the analysis of Trop World's duties or the application of New Jersey's Go[...] Samaritan Act.  On a similar note, Lundy has also not claimed he was an intended th[...] party beneficiary of the contract formed between Trop World and the Carlinos, and s[...] issue is not before this Court either.

[0]In Adamowicz v. Claridge at Park Place, Inc., 522 N.Y.S.2d 884, 135 A.D.2d 769 (19[...] the New York Supreme Court, Appellate Division, purported to apply New Jersey law w[...] held in a case much like this one that a casino/hotel owed "no duty, either at comm[...] or by statute, rule, or code, . . . to render aid to a sick patron."  522 N.Y.S.2d [...] The court, however, did not bother to cite a single New Jersey statute or case, or, [...] that matter, any sister state's law or other legal authority in support of its conc[...] Such "authority" is singularly unpersuasive.

[0]Cf. Moody v. Security Pac. Business Credit, Inc., 971 F.2d 1056, 1063 (3d Cir. 199[...] ("[w]here Pennsylvania law is silent, we may look to the law in other jurisdictions[...] Pennsylvania Glass Sand, 652 F.2d at 1167 (we may consider "[t]he policies underlyi[...] applicable legal doctrines, the doctrinal trends indicated by these policies, and t[...] decisions of other courts," and may additionally "consult treatises, the Restatemen[...] the works of scholarly commentators"); McKenna v. Ortho Pharmaceutical Corp., 622 F[...] 657, 663 (3d Cir. 1980) ("In sum, a federal court attempting to forecast state law [...] consider relevant state precedents, analogous decisions, considered dicta, scholarl[...] works, and any other reliable data."), cert. denied, 449 U.S. 976, 101 S. Ct. 387 ([...]

and senseless of deaths.  Over the years, as commentators decried these decisions a

revolting and an outrage to the moral conscience, courts worked widening inroads or

antiquated and perverse doctrine.

The clearly prevailing view today is that social policy justifies the imp

of a duty to act if one of a burgeoning group of special relationships exists betwe

parties.  See generally W. PAGE KEETON ET AL., THE LAW OF TORTS § 56, at 373-76 (5th ed.

ed. 1984); 3 FOWLER V. HARPER ET AL., THE LAW OF TORTS § 18.6, at 718-21 (2d ed. 1986).  A

such a special relationship, the unquestionably widely prevailing view still is tha

is no duty to rescue the helpless.  See, e.g., REST.2D TORTS § 314 & cmt. c (1965).

generally Jay Silver, The Duty to Rescue:  A Reexamination and Proposal, 26 WM. & M

REV. 423 (1985).

The special relationship bearing on this case is that between a business

invitee.  See supra at 29.  The Restatement (Second) of Torts § 314A[0] succinctly ex

the business' duty in that context:
> (1)  A common carrier is under a duty to its passengers to take reasonabl
> action
>> (a)        to protect them against unreasonable risk of physical harm
>> (b)        to give them first aid after it knows or has reason to kno
>> they are ill or injured, and to care for them until they can be care
>> by others.
> . . .
> (3)  A possessor of land who holds it open to the public is under a simil
> to members of the public who enter in response to his invitation.

REST.2D TORTS § 314A (emphasis supplied).  The essential imperative to be drawn from

language is the directive of "reasonable action."

Contrary to the apparent holding of the majority, see infra at 37-37, I o

from the case law that "reasonable action" may exceed the mere summoning of emergen

---

[0]Section 314A has met with astounding success:  the great majority of the cases men
in this section handed down after 1965 adopt it or cite it with approval.  Incident
the lone published New Jersey case to reference § 314A, albeit tangentially, did so
approvingly.  See McIntosh v. Milano, 168 N.J. Super. 466, 403 A.2d 500, 509 (Law D
1979).

31

care.  The modern, general common law recognizes that, where the law imposes a duty

rescue, in harmony with general principles of negligence law it demands of those su

to the duty reasonable care under the circumstances.  See KEETON ET AL., THE LAW OF TORT

at 377.  For example, one renowned commentator writes that the one owing the duty '

seldom be required to do more than give such first aid as he reasonably can, and ta

reasonable steps to turn the sick person over to a doctor or to those who will look

him until one can be brought."  Ibid. (emphasis supplied); accord REST.2D TORTS § 314

f.

Based on these sources, I believe that the New Jersey Supreme Court would

recognize that a business owes its invitees a duty thus circumscribed.  But I canno

canvass only learned works, but must sojourn forth beyond New Jersey's frontiers to

its sister jurisdictions in order to gain a sense of how this duty has played out i

similar situations.  Though I have located no case on all fours with the one sub ju

the cases I have found generally support the views of the commentators and the Rest

quoted above, and many are close enough to provide fruitful guidance.  I enumerate

the margin.

---

Comment f to § 314A of the Restatement provides:

> The defendant . . . is not required to take any action beyond that which
> reasonable under the circumstances.  In the case of an ill or injured per
> will seldom be required to do more than give such first aid as he reasona
> can, and take reasonable steps to turn the sick man over to a physician,
> those who will look after him and see that medical assistance is obtained

REST.2D (TORTS) § 314A cmt. f (emphasis supplied); see id. illus. 1, 5, 7.

An early landmark decision departing from the traditional hesitation by courts to
an affirmative legal duty to act was handed down by the Minnesota Supreme Court in
celebrated case of Depue v. Flateau, 100 Minn. 299, 111 N.W. 1,3 (1907) (holding th
defendant, who was visited by a business-invitee who took ill during his visit, owe
invitee a duty to take reasonable steps to assure the plaintiff's well-being if the
defendant appreciated plaintiff's condition; to satisfy his duty, the defendant nee
necessarily have entertained the plaintiff through the night -- although if reasona
under the circumstances he should have -- but had only to do what was reasonably po
given the situation, such as contacting his neighbors or summoning care).  Courts h
the time since imposed other reasonable obligations besides summoning aid on busine

32

See, e.g., Estate of Starling v. Fisherman's Pier, Inc., 401 So.2d 1136, 1138 (Fla.
Ct. App. 1981) (holding in a case where a proprietor had knowingly left an inebriat
lying alone and unconscious on a pier near the water that a proprietor has a duty t
safeguard a customer upon its premises whom it knows is exposed to extreme hazards,
if the customer brought the hazard upon himself; the customer had fallen into the c
and drowned), petition denied, 411 So. 2d 381 (Fla. 1981); Lloyd v. S.S. Kresge Co.
Wis.2d 296, 270 N.W.2d 423, 426 (Ct. App. 1978) (holding that a business which, alt
it was freezing cold outside, refused to let a customer it knew or should have know
ill remain in the store for ten minutes after closing while she waited for her ride
be liable for negligence because it had to take reasonable steps to shelter a custo
L.S. Ayres & Co. v. Hicks, 220 Ind. 86, 40 N.E.2d 334, 336-38 (holding that, while
business must not attend a dangerous instrumentality on its premises, a business mu
act reasonably once alerted to the danger of an ongoing injury to an invitee if the
aggravation of the injury is caused by the business' instrumentality, although the
the injury cannot be attributed to any negligence on its part; a child had fallen a
caught his fingers between the steps and comb on the floor at the base of an escala
reh'g denied, 220 Ind. 98, 41 N.E.2d 195 (1942); Connelly v. Kaufmann & Baer Co., 3
261, 37 A.2d 125, 127 (1944) (same).

Faced with scenarios evoking the duty actually to provide medical care, c
have consistently imposed on a business a standard of care satisfied by reasonable
to summon medical aid and take other reasonable action to ameliorate the injury, bu
more. See, e.g., Applebaum v. Nemon, 678 S.W.2d 533, 535-37 (Tex. Ct. App. 1984) (
that the daycare-child relationship imposed upon the daycare a common law duty "to
reasonable assistance to a child in its custody who becomes imperiled" and that "[i
circumstances the defendant will not be required to do more than administer whateve
initial aid he reasonably can and knows how to do, and take reasonable steps to pla
injured person in the hands of a competent physician" (emphasis supplied); the dayc
center was not obligated to have present medically trained employees who could admi
CPR, a relatively simple first aid technique to learn and administer, or other medi
assistance in times of emergency, and it had no duty to train its employees to deal
medical emergency effectively); see also Baca v. Baca, 81 N.M. 734, 472 P.2d 997, 1
(Ct. App. 1970) (holding that a bar which had turned a customer injured in a bar ro
brawl over to the police's custody as a drunk without troubling to inform them of h
serious injuries may have breached its "duty to take reasonable care of him"). A c
contemporary occurrence in which courts have directly addressed whether a business
required to provide minimal first aid -- typically the Heimlich Maneuver -- or whet
duty is satisfied simply by taking reasonable steps such as promptly calling for em
help is in restaurant choking cases. Although, like CPR, the Heimlich Maneuver is
relatively simple yet astonishingly successful emergency technique, influenced by t
infrequency of fatal chokings and the rapid employee turnover common to restaurant
the clear majority rule is that there is no duty to provide emergency treatment. S
v. LeJay's Sportsmen's Cafe, Inc., 806 P.2d 301, 305-06 (Wyo. 1991); Coccarello v.
Table of Coral Gables, Inc., 421 So.2d 194, 195 (Fla. Dist. Ct. App. 1982) (per cur
Parra v. Tarasco, Inc., 230 Ill. App. 3d 819, 595 N.E.2d 1186, 1188, 1192-93 (1992)
(relying on a statute shielding restaurants from liability for failing to so aid ch
patrons); Breaux v. Gino's, Inc., 153 Cal. App. 3d 379, 200 Cal. Rptr. 260, 261-62
(same); Acosta v. Fuentes, 150 Misc.2d 1013, 571 N.Y.S.2d 666, 667-68 (N.Y. Sup. Ct
(same). But see City Nat'l Bank v. 4000 Restaurant, Inc., 372 So.2d 1146, 1147 (Fl
Dist. Ct. App. 1979) (per curiam) (Anstead, J., dissenting).

33

Although, as already stated, no New Jersey case directly on point has bee[n]

found, some older, related decisions confirm that the New Jersey Supreme Court woul[d]

likely announce the duties as I have described them. The most pertinent case is Sz[abo v.]

Pennsylvania R.R. Co., 132 N.J.L. 331, 40 A.2d 562 (1945), in which the predecessor[s]

to the New Jersey Supreme Court pinpointed the standard of care an employer owes a[n]

employee:

> It is conceded that in this and other jurisdictions the law is, that [in the]
> absence of a contract or a statute, there rests no duty upon an employer [to]
> provide medical service or other means of cure to an ill, diseased or inj[ured]
> employee, even though it result[s] from the negligence of the master.
> In our judgment there is a sound and wise exception to this rule, fo[unded]
> upon humane instincts.
> That exception is, that where one engaged in the work of his master [and]
> receives injuries, whether or not due to the negligence of the master, re[nder]
> him helpless to provide for his own care, dictates of humanity, duty and [fair]
> dealing require that the master put in the reach of such stricken employe[e such]
> medical care and other assistance as the emergency, thus created, may in [reason]
> require, so that the stricken employee may have his life saved or may avo[id]
> further bodily harm. This duty arises out of strict necessity and urgent
> exigency. It arises with the emergency and expires with it.

Szabo, 40 A.2d at 562 (citations omitted) (emphasis supplied); accord Lanier v.

Kieckhefer-Eddy Div. of Weyerhaeuser Timber Co., 84 N.J. Super. 282, 201 A.2d 750, [___]

(1964). The court explained that, while the foreman "was not called upon to correc[tly]

diagnose decedent's particular ailment," he should have known of decedent's inabili[ty to]

care for himself, and it was a question for the jury whether the employer breached [its duty.]

---

Equally instructive are cases that have found no breach of a duty on the [part of]
a business toward its invitees. See Traudt v. City of Chicago, 98 Ill. App. 2d 417[, 240]
N.E.2d 188, 191 (1968) (holding that an airport had no duty to maintain "safety app[urte-]
nances and appliances" which it could employ to save drowning pilots, although it w[as]
foreseeable if not highly probable that, given the airport's location, some plane w[ould]
crash into the surrounding lake); Harold's Club v. Sanchez, 70 Nev. 518, 275 P.2d 3[84,]
386-87 (1954) (holding that a casino had no duty to commit a "privileged battery" t[o]
prevent an inebriated patron from riding upon an escalator, even if an injury appea[red to]
be likely); Dumka v. Quaderer, 151 Mich. App. 68, 390 N.W.2d 200, 203-04 & n.2 (198[6)]
(holding that a business had no duty to aid or assist a customer who entered the pr[emises]
in an inebriated condition and that the business violated no duty when it ordered t[he]
customer to leave, accompanied by his friends, and when it took no steps to assist [him]
when it later learned that his friends had returned to the establishment, leaving h[im]
exposed to danger), appeal denied, 426 Mich. 861 (1986).

duty by simply delivering decedent to his home, where he was left helpless and alo[ne] instead of to his family, a physician, or a hospital.  See id. at 562-63; accord Bu[___ v.] Bakelite Corp., 17 N.J. Super. 441, 86 A.2d 289, 290-91, certif. denied, 9 N.J. 335[, 88] A.2d 366 (1952).  I read Szabo and its progeny as fully in support of my view that, [under] New Jersey Law, a business has a duty to summon medical aid and take other reasonab[le] steps to assist its invitees who fall helplessly ill, but not actually to prepare f[or] contingencies or to provide medical aid beyond the pre-existing abilities of those [who] happen to be present.

I therefore conclude that the New Jersey Supreme Court would, if presente[d with] a case like this one, hold that the business owed the invitee a (preexisting) duty [to] summon medical aid reasonably promptly and to take other reasonable steps under the circumstances to save its invitees from emergencies beyond the invitee's or his or [her] companions' capacity to ward off, but would not further require the business to aff[ord the] invitee first aid or emergency medical care or equipment beyond that which happens [to be] reasonably available at the time of the emergency.[0]

As already said, I agree with the majority, in light of the arguments rai[sed in] Lundy's brief, that Trop World did not breach its duty to summon medical assistance promptly.[0]  But I am far less convinced that Nurse Slusher acted reasonably in refu[sing]

---

[0]I do not believe that the New Jersey Supreme Court would hold that Trop World had [a duty] to maintain emergency medical equipment, such as an intubation kit, on its premises [in the] first instance.  My conclusion that there is a jury question in this case derives s[olely] from the observation that Trop World did, in fact, have an intubation kit on the pr[emises,] and hence the only question is whether it would have been reasonable under the circ[um]stances for Nurse Slusher to bring it to Dr. Greenberg, who had manifested his capa[city to] use it, once he requested it. This does not punish Trop World for maintaining such equipment on its premises, but merely implements the general negligence doctrine th[at one] must act reasonably under the circumstances; the coincidental presence nearby of a lifesaving device is simply one of the relevant circumstances a jury may consider.
[0]Even though the majority mentions Dr. Greenberg's testimony that it took about twe[nty] minutes for the ambulance to arrive, see Maj. Op. at 6-7, I in no way suggest that [a] seventeen minute delay (twenty minutes less the three minutes from the time it was summoned it took the ambulance to arrive) before summoning medical care would be reasonably prompt under the circumstances: that issue is simply not before us.

35

fetch the intubation kit located close by when Dr. Greenberg requested it, enough s

I believe a jury should be empaneled to consider this point.

The pertinent facts established by the deposition testimony are as follow
intubation kit, or at least enough of the equipment to make do, was inventoried in
Slusher's office, one floor above the pit where Lundy lay fighting for his life. A
217a (Dep. of Dr. Greenberg); App. at 153a, 154a-55a (Dep. of Nurse Slusher). Afte
Slusher arrived at the scene, Dr. Greenberg identified himself as a doctor and requ
an intubation kit. App. at 212a, 215a (Dep. of Dr. Greenberg); App. at 241a-42a (D
Mrs. Greenberg). Nurse Slusher responded that Trop World policy prevented her from
employing an intubation kit, and she apparently misrepresented that no intubation k
on the premises. App. at 216a (Dep. of Dr. Greenberg); App. at 241a-42a (Dep. of M
Greenberg). Because there were two doctors and another registered nurse in attenda
App. at 159a, 161a-62a (Dep. of Nurse Slusher), and because the other registered nu
alternated using the ambu-bag on Lundy with Nurse Slusher, App. at 240a-41a (Dep. c
Greenberg), a jury could reasonably conclude that someone other than Nurse Slusher
have operated her ambu-bag while she made haste to secure the intubation kit such a
distance away from a dying man.

Of course, insofar as Trop World was under no preexisting duty to render
aid to Lundy in the first place, to the extent it did so New Jersey's Good Samarita
would shield it from liability (so long as it acted in good faith). See Maj. Op. a
19. Again, I emphasize that I think there is a jury question of negligence here on
because a jury could view getting the intubation kit from the office and handing it
Greenberg to be a reasonable step (and hence one which would fall within its "preex
duty"), as it does not encompass rendering first aid beyond the actual preexisting
of anyone present in the normal course of things to perform. That is, if the jury
view that step as reasonable in light of the proximity of the intubation kit and th
medical emergency at hand, then Trop World would have been under a "preexisting dut

36

take that step, and the Good Samaritan Act would not shelter its failure to do so.
Praet v. Borough of Sayreville, 218 N.J. Super. 218, 527 A.2d 486, 489 (1987) (hol
that the Good Samaritan Act does not immunize "one who has either a contractual,
relational, or a transactional duty to render assistance" (emphasis supplied)).  He
Nurse Slusher did not retrieve the intubator kit available to her when Dr. Greenber
requested it, an act which would not itself comprise the furnishing of medical care
which a jury could reasonably consider to be simply a reasonable step not too dissi
from summoning emergency care.

I am puzzled by the majority's opinion in this respect. First, it seems t
assume, for the sake of argument, that Trop World owed Lundy the "preexisting duty"
"provide such first aid prior to the arrival of qualified assistance as the [casino
employees are reasonably capable of giving."  Maj. Op. at 15.  Moreover, operating
its hypothetical that Nurse Slusher was a Trop World employee, it assigns those sam
duties to Nurse Slusher.  Maj. Op. at 19-20.  But then it decides that Nurse Slushe
assumed duty "to provide such first aid" as she was "reasonably capable of giving"
not include running up a flight of stairs to retrieve a medical device for a doctor
attending a critically ill patient.  See Maj. Op. at 20.

Although the majority does not spell it out, I surmise that it did not me
say that Nurse Slusher was not "reasonably capable" of running up a flight of stair
retrieve the potentially life-saving intubation kit.  Thus, it must have concluded
Slusher breached no duty toward Lundy because, as a matter of law, it is not "first
for a nurse to retrieve a nearby medical instrument for a doctor in an emergency.
conclusion, however, leaves me perplexed, even leaving aside any notion of "the gre
includes the lesser" (that is, that the greater duty to provide reasonable first ai
includes the lesser duty to take reasonable steps other than the provision of minim
emergency medical care, see supra at **Error! Bookmark not defined.** n.**Error! Bookmark**

37

**defined.** (discussing cases)). I simply do not understand why the majority concludes matter of law that Nurse Slusher breached no "preexisting duty" toward Lundy.

Based on the fact pattern in this case, I conclude that a jury should pro determine whether Nurse Slusher's employer (by operation of <u>respondeat superior</u>) ac reasonably under the circumstances as described or whether it breached its duty tow Lundy. Accordingly, I respectfully dissent from the majority's contrary conclusio

### III. CONCLUSION

Because I believe that Rule 15(c) authorizes the relation back of amendme adding a new party and that the Carlinos were afforded proper notice of the institu this action when served with Lundy's Complaint by Trop World in its Third-Party Com I would reverse the district court's contrary legal conclusions and remand for its reconsideration using the correct legal standard of the magistrate judge's findings fact and conclusions of law. Therefore I respectfully dissent from the majority's judgment affirming the district court's refusal to permit Lundy to amend his Compl relate back his addition of the Carlinos as defendants.

I also note my disagreement with the majority's conclusion that, even wer World Nurse Slusher's employer, it would be entitled to summary judgment. Neverthe because Nurse Slusher was employed by an independent contractor (the Carlinos), and because Lundy has not appealed the district court's ruling that under New Jersey la World could not be held accountable for their conduct, I concur with the majority's judgment that Trop World is entitled to summary judgment.

38